UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| C. NORRIS MANUFACTURING, LLC, ) | |
| ) | |
| Plaintiff, ) | CASE NO.:  5:14CV2797 |
| ) | |
| v. ) | |
| ) | |
| BRT HEAVY EQUIPMENT, LLC, d/b/a ) | MAGISTRATE JUDGE |
| BEELMAN HEAVY EQUIPMENT, LLC, ) | GEORGE J. LIMBERT |
| *et al.*, ) | |
| ) | |
| Defendants/Counterclaim ) | |
| Plaintiffs, ) | MEMORANDUM OPINION & ORDER |
| ) | |
| v. ) | |
| ) | |
| CHRISTOPER NORRIS, *et al.*, ) | |
| ) | |
| Counterclaim Defendants. ) | |
| ) | |

This matter is before the Court on a motion for partial dismissal of Counterclaim-Plaintiffs Beelman River Terminals Inc. and BRT Heavy Equipment LLC's (hereinafter, "Counterclaim-Plaintiffs") amended counterclaim (ECF Dkt. #59) pursuant to Fed.R.Civ.P. 12(b)(6) filed by Counterclaim-Defendants C. Norris Manufacturing LLC, International Barge & Steel LLC, Christopher Norris, and Robert Rogers (hereinafter, "Defendants") on January 4, 2016. ECF Dkt. #65. Counterclaim-Plaintiffs filed a brief in opposition to Counterclailm-Defendants' motion for partial dismissal on March 8, 2016. ECF Dkt. #70. On March 24, 2016, Counterclaim-Defendants filed a reply in support of their motion for partial dismissal. ECF Dkt. #72.

1

For the following reasons, the Court DENIES Counterclaim-Defendants' motion to dismiss (ECF Dkt. #65).

## I. FACTUAL AND PROCEDURAL HISTORY

Counterclaim-Plaintiff's amended counterclaim, which was filed with leave from the Court, serves as the source of operative facts.  ECF Dkt. #59.  BRT Heavy Equipment LLC and Beelman River Terminals Inc. (collectively, "Beelman") use work barges in operations at various port facilities.  *Id*. at ¶ 7.  In 2014, Beelman was in the market for procuring spud barges to handle additional materials and other products at in-land port facilities in Illinois.  *Id*. at ¶ 8.  Christopher Norris ("Mr. Norris"), a representative of C. Norris Manufacturing LLC ("Norris"), contacted Sam Beelman ("Mr. Beelman"), a representative of Beelman, and inquired about submitting a proposal to design and construct these additional barges.  *Id*. at ¶ 9.

Counterclaim-Plaintiffs allege that Norris had little relative experience in designing and manufacturing barges, but that Mr. Norris advised Mr. Beelman that he had a relationship with Robert Rogers ("Mr. Rogers") who had "extensive experience" in the barge industry.  ECF Dkt. #59 at ¶ 10.  Mr. Rogers would form a company that could design and manufacture the desired barges ("IBS").  *Id*.  Counterclaim-Plaintiffs further allege that Mr. Norris told Mr. Beelman that "although Mr. Rogers and his company had not designed or constructed this particular type of inland-river barge, he had experience with barges for use in salt water applications."  *Id*. at ¶ 11.

Counteclaim-Plaintiffs allege that on or around August 22, 2014, both Mr. Norris and Mr. Rogers told Mr. Beelman that Mr. Rogers had "extensive experience" with barges and that IBS would "be hiring the necessary people to design and build the contemplated barges."  ECF Dkt. #59 at ¶ 14.  According to Counterclaim-Plaintiffs, Mr. Norris and Mr. Rogers promised Mr. Beelman that they would work with a professional engineer to develop the designs for the barges

and that all designs would be stamped and approved by that engineer.  *Id*.  Around the same time, Counterclaim-Plaintiffs allege that Mr. Beelman told Mr. Norris that he did not trust or feel comfortable doing business with Mr. Rogers or IBS.  *Id*. at ¶ 15.  Counterclaim-Plaintiffs further allege that in order to induce Mr. Beelman into the barge contract (the "Purchase Order"), Mr. Norris promised Mr. Beelman that "the barge contract would be with Norris and that all money paid to Norris would be kept in a separate bank account, controlled exclusively by Mr. Norris, and would be used exclusively for the barge project.  *Id*.

On August 26, 2014, Norris and Beelman entered into the Purchase Order, in which Beelman agreed to pay $307,500 as an initial payment.  ECF Dkt. #59 at ¶¶ 16, 18; *see also* ECF Dkt. #1-1 at 10-12.  On August 27, 2014, Beelman wired the initial payment of $307,500 to Norris.  *Id*.  Counterclaim-Plaintiffs allege that on or around September 3, 2014, $50,000 of the initial payment was transferred out of the separate Norris bank account and into an account in the name of IBS.  ECF Dkt. #59 at ¶ 21.  Counterclaim-Plaintiffs further allege that between the months of September and November, 2014, the only transactions made within that IBS bank account were transfers of amounts of the initial payment from Norris and further transfers of that money into the personal account of Mr. Rogers.  *Id*. at ¶ 22.

On September 16, 2014, Norris completed and submitted a drawing of the barge design to Beelman.  ECF Dkt. #59 at ¶ 27.  Counterclaim-Plaintiffs allege that as of September 29, 2014, Mr. Norris knew that the initial payment money was not being properly used.  *Id*. at ¶ 25.  Counterclaim-Plaintiffs additionally aver that on September 29, 2014, Mr. Norris further represented to Mr. Beelman that (1) Norris set up a separate bank account for the Purchase Order, and (2) none of the money for the Purchase Order would be mixed with "other company money" and would be used solely for expenses pertaining to the completion of the ordered

barges. *Id*. at 24. On October 3, 2014, Beelman's enginer returned a report, which described multiple deficiencies in the drawing prepared by Norris.

On October 23, 2014, Norris provided revised drawings for Beelman's review. ECF Dkt. #59 at ¶ 32. Counterclaim-Plaintiffs allege that Beelman's engineer also did not approve of these drawings. *Id*. at ¶ 34. On November 5, 2014, Mr. Rogers met with Mr. Beelman. *Id*. at ¶ 36. At the meeting, Mr. Rogers – on behalf of Norris – informed Mr. Beelman that it would cost an additional $100,000 per barge to complete the design and manufacturing of the desired barges. *Id*. On November 7, 2014, Beelman provided Norris written notice of its immediate termination of the Purchase Order. *Id*. at ¶ 42; *see also* ECF Dkt. #1-1 at 13.

Counterclaim-Defendants filed suit on November 18, 2014 in the Court of Common Pleas, Stark County, Ohio. On December 19, 2014, the case was removed to federal court in the Northern District of Ohio. ECF Dkt. #1. Counterclaim-Plaintiffs filed an amended counterclaim on December 7, 2015. ECF Dkt. #59. Counterclaim-Plaintiffs' amended counterclaim sets forth the following seven claims for relief:

    I – Declaratory Judgment

    II – Breach of Contract

    III – Fraud/Fraudulent Inducement

    IV – Negligent Misrepresentation

    V – Conversion

    VI – Unjust Enrichment

    VII – Piercing the Corporate Veil

*Id*. Counterclaim-Defendants filed the instant motion for partial dismissal on January 4, 2016. ECF Dkt. #65. In their motion to dismiss, Counterclaim-Defendants move to dismiss Counts III,

IV, V, VI, and VII of Counterclaim-Plaintiffs' amended counterclaim for failure to state a claim. *Id*. On March 8, 2016, Counterclaim-Plaintiffs filed an opposition to Counterclaim-Defendants' motion to dismiss. ECF Dkt. #70. Counterclaim-Defendants filed a reply in support of their motion to dismiss on March 24, 2016. ECF Dkt. #72.

## II. MOTION TO DISMISS

### A. STANDARD OF REVIEW

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether a claim has been adequately stated in the complaint. *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994) (citing *Nishiyama v. Dickson County, Tenn.*, 814 F.2d 277, 279 (6th Cir. 1987)). The basic pleading requirements are set out in Rule 8(a) and call for "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*.; Fed.R.Civ.P. 8(a). Rule 8(a) does not, however, "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) a court must "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." *Laborers' Local 265 Pension Fund v. iSharesTrust*, 769 F.3d 399, 403 (6th Cir. 2014). A complaint only requires "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Andrews v. State of Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). However, while construing the complaint in favor of the non-moving party, a court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D. Ohio 1993); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A complaint will only be dismissed

5

pursuant to Rule 12(b)(6) when there is no law to support the claims made, if the facts alleged are insufficient to state a claim, or if there is an insurmountable bar to relief on the face of the complaint. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).

### B. LAW AND ANALYSIS

In their motion for partial dismissal of Counterclaim-Plaintiffs' amended counterclaim, Counterclaim-Defendants move to dismiss the following claims: fraud and fraudulent inducement (Count III), negligent misrepresentation (Count IV), conversion (Count V), unjust enrichment (Count VI) and piercing the corporate veil (Count VII). ECF Dkt. #65 at 5. Counterclaim-Defendants argue that they are entitled to the dismissal of Counts III, IV, V, VI, and VII of Counterclaim-Plaintiffs' counterclaim as a matter of law.

#### 1. Fraud, Fraudulent Inducement

In Count III of their amended counterclaim, Counterclaim-Plaintiffs allege that Mr. Norris and Mr. Rogers knowingly made false representations in order to induce them into entering the Purchase Order. ECF Dkt. #59 at ¶ 69. Counterclaim-Plaintiffs allege that both Mr. Norris and Mr. Rogers falsely represented that Mr. Rogers has "extensive experience" in the barge industry, and that Mr. Norris represented all funds for the barge project would be kept in a separate account, which would be used exclusively for barge expenses and would not be controlled by Mr. Rogers. *Id.*

Both parties agree that the element of a claim for fraud and fraudulent inducement under Ohio law are:

> (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*HSBC Bank USA, Nat'l Trust Co. v. Teagarden*, 2013-Ohio-5816, 6 N.E.3d 678 (Ct. App. 2013) (citation omitted).  Under Fed.R.Civ.P. 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud."  In order to satisfy Rule 9(b), a complaint must state "(1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough v. VPA. P.C.*, 655 F.3d 461, 467 (6th Cir. 2011).  In addition, a plaintiff must plead fraud with particularity as to each defendant by "establish[ing] a connection between fraudulent acts or statements and each defendant, or . . . establish[ing] facts that inform each defendant of its participation in the fraud." *United States ex rel. Branhan v. Mercy Health System of Southwest Ohio*, 1999 U.S. App. LEXIS 18509, at *31 (6th Cir. Aug. 5, 2009); *Hoover v. Langston*, 958 F.2d 742, 745 (6th Cir. 1992) (holding that the complaint failed to satisfy requirements of Rule 9(b) because it "allege[d] misrepresentations without sufficiently identifying which defendants made them").

"In ruling upon a motion to dismiss under Rule 9(b) for failure to plead fraud 'with particularity,' a court must factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8." *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988).  Rule 8(a)(2) requires a "short and plain statement of the claim," and Rule 8(d)(1) calls for "simple, concise, and direct" allegations.  The test is whether the complaint places the defendant on "sufficient notice of misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiffs [sic] claim of fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (citing *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)).  "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a

7

failure to state a claim under Rule 12(b)(6)." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783, n.5 (4th Cir. 1999).

Counterclaim-Defendants argue that this claim fails to allege sufficient facts, with the requisite particularity, to state a claim for relief under Ohio law.  ECF Dkt. #65 at 9.  Counterclaim-Defendants aver that Counterclaim-Plaintiffs' allegations of "on or around August 22, 2014" are too broad, and that Counterclaim-Plaintiffs entirely fail to specify a "place" or which individuals made the particular false representations.  *Id*.  In opposition, Counterclaim-Plaintiffs argue that the amended counterclaim makes clear that Mr. Norris makes two false representations while both Mr. Norris and Mr. Rogers made several other false representations.  ECF Dkt. #70 at 7-8.  Counterclaim-Plaintiffs further assert that that the period of time stated in the amended counterclaim, "between August 22, 2014 and August 26, 2014," is particular enough to satisfy Rule 9(b) under its "broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense."  *Id*. (citing *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008)).

The Court concludes that this claim, under a liberal reading of Rule 9(b) in light of Rule 8, and construing all facts in favor of Counterclaim-Plaintiffs, is pled with sufficient particularity to survive a motion to dismiss.  Counterclaim-Plaintiffs fail to plead facts demonstrating "place" in relation to the "time, place, and content of the false representation."  ECF Dkt. #59 at 3-4, 14-15.  However, Counterclaim-Plaintiffs plead facts demonstrating time (between August 22 and August 26), who made which representations (either Mr. Norris, or both Mr. Norris and Mr. Rogers), content (Mr. Rogers had "extensive experience" and the contract money would be handled in a particular manner), and what Counterclaim-Defendants allegedly received as a result of the fraud (inducement of Beelman to enter Purchase Order).  *Id*.

8

Although they fail to allege *where* these false representations were made, they plead sufficient details for placing Counterclaim-Defendants on notice and to allow Counterclaim-Defendants to prepare a defense to the fraud allegations. Rule 9(b) should be "read in harmony" with Rule 8, insofar as it should provide a defendants with fair notice of the substance of the plaintiff's claim so that they may prepare a responsive pleading. *See Whalen v. Stryker Corp.*, 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011); *see also JAC Holding Enters., Inc. v. Atrium Capital Partners, LLC*, 997 F. Supp. 2d 710 (E.D. Mich. 2014) ("The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation allowing the defendants to answer, addressing in an informed way plaintiff's claim of fraud").

Therefore, for the above reasons, Counterclaim-Defendants' motion to dismiss Counterclaim-Plaintiffs' fraud claim (Count III of Counterclaim-Plaintiff's amended counterclaim (ECF Dkt. #59)) is DENIED.

### 2. Negligent Misrepresentation

Counterclaim-Plaintiffs' negligent misrepresentation claims are premised upon the allegation that Counterclaim-Defendants had duties to provide true and accurate information and failed to exercise reasonable care in communicating what was false and damaging representations to Plaintiffs. ECF Dkt. #59 at ¶¶ 81-89. Counterclaim-Plaintiffs allege that Mr. Beelman reasonably relied on these representations, which guided his business transactions leading up to entering the Purchase Order and also following entering into the agreement with Counterclaim-Defendants. *Id.*

>Ohio law holds that a claim for negligent misrepresentation arises when:
>
>[O]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if

> he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 505 (6th Cir. 2003) (quoting *Delman v. Cleveland Hts.*, 41 Ohio St.3d 1, 4, 534 N.E.2d 835, 838 (1989). A plaintiff who asserts a claim of negligent misrepresentation with a breach of contract claim must show injury and damages arising from conduct other than the breach of a contractual obligation. *See Universal Contracting Corp. v. Aug*, 2004-Ohio-7133, 2004 WL 3015325 (2004 Ohio Ct. App.) (citing *Textron Financial Corp. v. Nationwide Mutual Insurance Co.*, 115 Ohio App.3d at 151, 684 N.E.2d 1261) ("[T]he existence of a recovery for the breach of contract 'excludes the opportunity to present the same case as a tort claim'").

Counterclaim-Defendants argue that Counterclaim-Plaintiffs fail to state a claim for negligent misrepresentation because they fail to allege a tort duty independent of the contractual duties arising out of the Purchase Order. ECF Dkt. #65 at 17 (citing *Corporex Dev. & Const. Mgmt., Inc. v. Shook, Inc.*, 2005-Ohio-5409, 106 Ohio St. 3d 412, 835 N.E.2d 701). However, Ohio courts have held that the economic loss rule (preventing recovery in tort of damages for purely economic loss resulting from a breach of contractual duty) does not bar a party from raising a claim for negligent misrepresentation "when the alleged misrepresentation was intended to induce a party into entering into a contract." *See MRI Software, LLC v. Pac. Capital Mgmt.*, No. 1:15 CV 1268, 2016 U.S. Dist. LEXIS 49077 (N.D. Ohio Apr. 11, 2016); *See, also, e.g., Gutter v. Dow Jones, Inc.*, 22 Ohio St.3d 286, 22 Ohio B. 457, 490 N.E.2d 898 (Ohio 1986); *PLC Corp. v. Brandywine Recovery, Inc.*, 2015 WL 5852829, at *7 (N.D. Ohio, Oct. 6, 2015). Counterclaim-Plaintiffs allege that representations made to Mr. Beelman by Defendants were made with the intent to induce him into entering the Purchase Order. ECF Dkt. #59 at ¶¶ 14-16, 83. In the instant case, the alleged negligent representations involve the "extensive experience"

of Mr. Rogers and how the money for the barge project was to be handled. *Id*. These representations are separate from the duties premised upon the terms of the Purchase Order.

Counterclaim-Defendants also argue that Counterclaim-Plaintiffs' negligent representation claim should be dismissed because they fail to set forth the elements of the claim with sufficient particularity. ECF Dkt. #65 at 17. They aver that, similar to Counterclaim-Plaintiffs' fraud claim, Counterclaim-Plaintiffs fail to meet the requirements of "time, place, and content of the false representation." *Id*. In their opposition, Counterclaim-Plaintiffs argue that a negligent misrepresentation claim is analyzed under Fed.R.Civ.P. 8(a) and not the heightened standard under 9(b). ECF Dkt. #70 at 13 (citing *Rheinfrank v. Abbot Laboratories*, 2013 WL 4067826, *3 (S.D. Ohio Aug. 12, 2013)).

The Court finds that Counterclaim-Plaintiffs are correct and their negligent representation claim is appropriately viewed under the Rule 8(a) standard. *Abbot Laboratories*, 2015 WL 4067826 at *6; *See also Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 700 N.E.2d 94, 98, 121 Ohio App. 3d 434, 440-41 (Ohio Ct. App. 1997) (holding that fraud and negligent misrepresentation are separate and distinct tort claims). Counterclaim-Plaintiffs' amended counterclaim adequately sets forth allegations for negligent misrepresentation with the standard particularity required by Rule 8.

Therefore, for the aforementioned reasons, the Court DENIES Counterclaim-Defendants' motion to dismiss Counterclaim-Plaintiffs' claim for negligent misrepresentation (Count IV of amended counterclaim (ECF Dkt. #59)).

### 3. Conversion

Counterclaim-Plaintiffs allege that Counterclaim-Defendants "participated in the wrongful retention of Beelman's property in violation of Beelman's property rights" when they retained control over the $307,500 initial payment after termination of the Purchase Order. ECF Dkt. #59 at ¶ 91-93.

The claim of conversion is generally defined as "the wrongful control or exercise of dominion over property belonging to another inconsistent with or in denial of the rights of the owner." *R.J. Wildner Contracting Co., Inc. v. Ohio Turnpike Comm'n*, 913 F.Supp. 1031, 1043 (N.D. Ohio 1996). Under Ohio law, the elements of a conversion of property claim are: (1) the plaintiff's ownership or right to the possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. *See NPF IV, Inc., et al. v. Transitional Health Servs., et al.*, 922 F.Supp. 77, 81 (S.D. Ohio 1996); *see also Young v. City of Sandusky*, No. 3:03CV7490, 2005 WL 1491219 (June 23, 2005).

A plaintiff may claim conversion of money where the defendant is obligated to pay specifically identifiable funds to the plaintiff. *Transitional Health Servs.*, 922 F.Supp at 81 ("Conversion claims have been allowed where the funds in question were specific or sequestered, identifiable monies or funds entrusted to the defendant's care for a specific purpose"). A conversion claim is independent of a breach of contract claim "so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract." *DeNune v. Consol. Capital of N. Am., Inc.*, 288 F. Supp. 2d 844, 854 (N.D. Ohio 2003).

In their motion to dismiss, Counterclaim-Defendants argue that Counterclaim-Plaintiffs failed to identify any breach of duty separate from those created by the Purchase Order. ECF

Dkt. #65 at 19. Counterclaim-Plaintiffs' conversion claim, Counterclaim-Defendants aver, is "based on the same obligations [Plaintiffs] relies on in [their] breach of contract claim." *Id*. Further, Counterclaim-Defendants also argue that Counterclaim-Plaintiffs fail to establish ownership or right to possession of the property - $307,500 initial payment and any property purchased with such money – at the time of the alleged conversion. *Id*. In their opposition, Counterclaim-Plaintiffs argue that Counterclaim-Defendants' conduct "violated . . . Defendants' general duty to avoid wrongful conduct that induces a party to enter into a contract." ECF Dkt. #70 at 13 (citing *Onyx Envtl. Servs., LLC v. Maison*, 407 F. Supp. 2d 874, 879 (N.D. Ohio 2005)). Counterclaim-Plaintiffs also allege in their opposition that Counterclaim-Defendants also violated duties "associated with their promises to Mr. Beelman to keep the funds 'safe,' separate from other Norris Manufacturing money, and spend only on barge-related expenses." *Id*. at 14.

In the instant case, Counterclaim-Defendants rightfully secured possession of the $307,500 sum under the obligations and duties of the Purchase Order. *See* ECF Dkt. #1-1 at 10-12. Under Ohio law, a person who rightfully secured possession of property is not held to have converted it "until he fail[s] to restore it upon demand, or by some act or circumstance of his own creation." *Fid. & Deposit Co. v. Farmers & Citizens Bank*, 72 Ohio App. 432, 52 N.E.2d 549 (1943). Counterclaim-Plaintiffs claim a duty arising out of Counterclaim-Defendants' representations regarding how the money paid for the barge project would be handled. ECF Dkt. #70 at 14. These promises are separate from the terms and agreements of the Purchase Order. Further, Counterclaim-Plaintiffs allege that Counterclaim-Defendants' refused to return the money or unlawfully purchased property. ECF Dkt. #59 at ¶ 59. Thus, construing the facts in

13

the light most favorable to Counterclaim-Plaintiffs, Counterclaim-Plaintiffs adequately states a claim for conversion to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).

For the foregoing reasons, the Court DENIES Counterclaim-Defendants' motion to dismiss Counterclaim-Plaintiffs' conversion claim (Count V of Counterclaim-Plaintiffs' amended counterclaim (ECF Dkt. #59)).

### **4.** **Unjust Enrichment**

In Count VI of their amended counterclaim, Counterclaim-Plaintiffs argue that it "would be unjust for [Defendants] to retain the benefit they obtained from the Beelman Money." ECF Dkt. #59 at ¶ 101. Counterclaim-Plaintiffs' unjust enrichment claim is premised on the Purchase Order. *Id*. at ¶ 97. Counterclaim-Plaintiffs aver that the initial payment made under the Purchase Order was a benefit conferred by Counterclaim-Plaintiff onto Counterclaim-Defendants and that Counterclaim-Defendants acknowledged the benefit and retained it without performing any of their duties under the Purchase Order. *Id*. at ¶¶ 99-100.

In Ohio, unjust enrichment occurs "when a party retains money or benefits which in justice and equity belong to another." *Liberty Mut. Ins. Co. v. Indus. Comm'n of Ohio*, 40 Ohio St. 3d 109, 532 N.E.2d 124, 125 (Ohio 1988). To recover on a claim of unjust enrichment, a party must show: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (Ohio 1984). Ohio law generally does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject. *See Randolph v. New England Mut. Life Ins.*, 526 F.2d 1383, 1387 (6th Cir. 1975).

Counterclaim-Defendants argue that because the Purchase Order constitutes an express contract governing the subject of Counterclaim-Plaintiffs' claims, Counterclaim-Plaintiffs are unable to assert an unjust enrichment claim and the claim should be dismissed. ECF Dkt. #65 at 20-21. Counterclaim-Plaintiffs maintain that unjust enrichment may be brought against non-parties to a contract to recover quasi-contract damages, and may be maintained as an alternative theory where there is evidence of "fraud, bad faith, or illegality." ECF Dkt. #70 at 14 (citing *Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp. 2d 763, 772 (N.D. Ohio 2004)). In their reply to Counterclaim-Plaintiffs' opposition, Counterclaim-Defendants argue that "an unjust enrichment claim may be maintained where a third party provides a benefit to a party to a contract, but is not compensated for the benefit provided." ECF Dkt. #72 at 11.

The Court finds that Counterclaim-Plaintiffs are correct that an unjust enrichment claim may be held where there is also a claim for fraud. The Court has already concluded above that Counterclaim-Plaintiffs satisfied the heightened standard for fraud under Fed.R.Civ.P. 9(b) and therefore have a valid claim for fraud and fraudulent inducement. Because Plaintiffs' fraud claim survives Counterclaim-Defendants' motion pursuant to Rule 12(b)(6), they may maintain an unjust enrichment as an alternative theory of recovery. The existence of the Purchase Order, then, does not preclude them from brining this claim.

Therefore, for the reasons noted above, the Court DENIES Counterclaim-Defendants' motion to dismiss Counterclaim-Plaintiffs' unjust enrichment claim (Count VI of Counterclaim-Plaintiff's amended counterclaim (ECF Dkt. #59)).

### **5.** **Piercing the Corporate Veil**

Counterclaim-Defendants move to dismiss Count VII of Counterclaim-Plaintiffs' amended counterclaim, which seeks to pierce the corporate veil of both Norris and IBS in order

to reach Mr. Norris and Mr. Rogers and hold them personally liable for the damages alleged in the amended counterclaim.  ECF Dkt. #65 at 21.  Counterclaim-Plaintiffs allege that "Mr. Norris and Mr. Rogers used the corporate form . . . to induce Beelman into the [Purchase Order] and to induce Beelman to deposit $307,500 as a 'down payment.'"  ECF Dkt. #59 at ¶ 107.  According to Counterclaim-Plaintiffs, Mr. Norris and Mr. Rogers controlled the two companies in a way that made the two companies interchangeable.  *Id*. at ¶ 108.

In Ohio, the corporate form may be disregarded and the shareholders and officers of a corporation may be held liable for corporate misdeeds when:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own;
>
> (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and
>
> (3) injury or unjust loss resulted to the plaintiff from such control or wrong.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 289, 1993 Ohio 119, 617 N.E.3d 1075 (1993); *see also Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005).

The first *Belvedere* element restates the alter ego doctrine by requiring a plaintiff to show that the individual and corporation are "fundamentally indistinguishable." *Belvedere*, 67 Ohio St. 3d at 288, 617 N.E.2d at 1086.  To that end, Ohio courts consider such factors as: (1) grossly inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor corporation at the time the debt is incurred; (4) shareholders holding themselves out as personally liable for certain corporate obligations; (5) diversion of funds or other property of the company for personal use; (6) absence of corporate records; and (7) the fact that the corporation was a mere façade for the operations of the dominant shareholder(s).  *Hitachi Medical Sys.*

16

*America, Inc. v. Branch (Hitachi II)*, No. 5:09cv1575, 2011 WL 3921718, at *5 (N.D. Ohio Sept. 7, 2011) (citations omitted).

The Ohio Supreme Court in 2008 elucidated the second prong of the *Belvedere* test by stating:

> [W]e hold that to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercises control over the corporation in such a manner as to commit fraud, an illegal act, or a simply unlawful act.  Courts should apply this limited expansion cautiously toward the goal of piercing the corporate veil only in cases of extreme shareholder misconduct.

*Dembroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 513, 2008 Ohio 4827, 895 N.E.2d 538, 545 (2008).  In *Dembroski*, "the Ohio Supreme Court clarified that the second prong of the *Belvedere* test refers specifically to fraud or an illegal act and does not refer to mere unjust or inequitable acts that do not rise to the level of fraud or illegality." *State ex rel. DeWine v. S&R Recylcing, Inc.*, 195 Ohio App. 3d 744, 2011 Ohio 3371, 961 N.E.2d 1153, 1159 (Ohio Ct. App. June 30, 2011).

Counterclaim-Defendants argue that Counterclaim-Plaintiffs fail to satisfy the second prong of the *Belvedere* test because they fail to state a claim for fraud.  ECF Dkt. #65 at 22.  Counterclaim-Defendants explain that because Counterclaim-Plaintiffs failed to plead fraud with the particularity required by Fed.R.Civ.P. 9(b) they are not entitled to pierce the corporate veil under *Belvedere* standards and their claim should be dismissed.  *Id*. at 23.  Counterclaim-Defendants also argue that Counterclaim-Plaintiffs fail under the third prong of the *Belvedere* test because they only allege injury resulting from the alleged breach of contract and do not allege any injury or unjust loss as a result of Mr. Norris or Mr. Roger's conduct.  *Id.*

The Court has already determined that Counterclaim-Plaintiffs' bring a claim for fraud sufficient enough to survive Counterclaim-Defendants' motion to dismiss.  Additionally, in their

17

amended counterclaim, Counterclaim-Plaintiffs allege that Mr. Norris and Mr. Rogers *personally* made false representations that directly resulted in injury and unjust loss to Plaintiffs.  *See* ECF Dkt. #59 at ¶¶ 14-18, 69, 73.  Thus, Counterclaim-Plaintiffs satisfy the second and third elements of the *Belvedere* test.  The only element remaining in question is therefore the first prong: control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own.

      After considering the relevant factors noted above, the Court finds that – considering the factual allegations in a light most favorable to Counterclaim-Plaintiffs – that Counterclaim-Plaintiffs allege sufficient allegations to satisfy the first element of the *Belvedere* test.  In their amended counterclaim, Counterclaim-Plaintiffs allege that IBS is a "sham company."  ECF Dkt. #59 at 10.  Counterclaim-Plaintiffs aver that IBS is a "mere façade" for the operations of Mr. Rogers, particularly to deceive Mr. Beelman.  *Id*. at ¶ 46.  Counterclaim-Plaintiffs also allege that funds paid by Beelman for the barge project were "used to pay for things like trips to Nassau, Bahamas, bar tabs, and other expenses wholly unrelated to the barge project."  *Id*. at ¶ 22.  This would constitute an allegation that company funds were diverted for a personal use.  Therefore, taking the factual allegations in the amended counterclaim as true, the Court finds that Counterclaim-Plaintiffs have satisfied all three elements of the *Belvedere* test.

      For the above reasons, the Court DENIES Defendants' motion to dismiss Counterclaim-Plaintiffs' claim for piercing the corporate veil (Count VII of Counterclaim-Plaintiffs' amended counterclaim (ECF Dkt. #59)).

## III.    CONCLUSION

In light of the foregoing, the Court DENIES Counterclaim-Defendants' motion to dismiss (ECF Dkt. #65) Counterclaim-Plaintiffs' amended counterclaim (ECF Dkt. #59).  Counts III, IV, V, VI, and VII of Counterclaim-Plaintiffs' amended counterclaim will remain.

IT IS SO ORDERED.

Dated:  August 1, 2016                                             /s/George J. Limbert
                                                                   GEORGE J. LIMBERT
                                                                   U.S. MAGISTRATE JUDGE