**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **C. NORRIS MANUFACTURING, LLC.,** | ) | **CASE NO.  5:14CV2797** |
| | ) | |
| **Plaintiff,** | ) | **UNITED STATES MAGISTRATE** |
| | ) | **JUDGE GEORGE J. LIMBERT** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| **BRT HEAVY EQUIPMENT, LLC. et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

This matter is before the Court upon a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by Defendants BRT Heavy Equipment, LLC., doing business as Beelman Heavy Equipment, LLC., and Beelman River Terminals, Inc.'s ("Defendants). ECF Dkt. #84.  Defendants assert that they are entitled to judgment as a matter of law on Plaintiff C. Norris Manufacturing LLC's ("Plaintiff") complaint against them.  *Id.*

For the following reasons, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's promissory estoppel claim and dismisses that claim WITH PREJUDICE.  ECF Dkt. #84.  The Court  DENIES Defendants' motion for summary judgment on all other grounds.  ECF Dkt. #84.

**I.      FACTUAL AND PROCEDURAL HISTORY**

On December 19, 2014, Defendants filed a notice of removal with this Court from the Stark County Court of Common Pleas.  ECF Dkt. #1.  Defendants indicated that Plaintiff filed a two-count

complaint against them in the Stark County Court of Common Pleas for breach of contract and promissory estoppel and they attached a copy of said complaint.  ECF Dkt. #1-1.

In that complaint, Plaintiff alleged that it was an Ohio limited liability company that is a leading supplier of hydraulic excavator long reach fronts for the material handling industries.  *Id.* at 2.  It explained that it upgrades, reconstructs, and builds cranes for any industry, including building and modifying cranes for barge loading and unloading.  *Id.*  Plaintiff further alleged that Defendant Beelman River Terminals, Inc. is a Missouri corporation with a principal place of business in Illinois and Sam Beelman is a principal with BRT Heavy Equipment, LLC., doing business at Beelman Heavy Equipment LLC., and Beelman River Terminals, Inc., with the authority to enter into contracts on behalf of Beelman.  *Id.* at 2.

Plaintiff averred in its complaint that it had performed prior projects for Beelman-affiliated entities but never manufactured barges for Beelman before.  ECF Dkt. #1-1 at 3.  Plaintiff further alleged that on or around April 21, 2014, Sam Beelman informed it that Beelman was in the market to buy barges and Sam Beelman provided Plaintiff with a concept drawing for a possible barge layout on or around June 12, 2014 and asked if Plaintiff would survey the market to see if any such barges were available.  *Id.*  After Sam Beelman was not satisfied with the barges available for sale on the market and other barge fabricators could not meet the availability that Sam Beelman sought due to other pending projects, Plaintiff submitted a quote to Defendants on August 1, 2014 for barge fabrication after it consulted with a maritime engineer/naval architect.  *Id.*  Plaintiff averred that Sam Beelman responded that he wanted three barges and Chris Norris, an agent of Plaintiff, along with Robert Rogers, met with Sam Beelman to discuss the barges and they discussed that the company

2

that would build the barges would be a new start-up company that would have Defendants' purchase order as its first order. *Id*.

Plaintiff further averred in the complaint that the parties agreed that because Defendants were familiar with Plaintiff, the contract for purchasing the barges would be between Plaintiff and Defendants and Plaintiff would subcontract fabrication to the start-up company which would be known as International Barge & Steel, LLC. ("IBS"), which was formed by Christopher Norris and Robert Rogers and its business would be to build barges for customers on custom specifications. ECF Dkt. #1-1 at 4. Plaintiff alleged that at the meeting, the parties drafted a draw schedule that would facilitate the start-up equipment, materials, and labor required to build the barges and they agreed that the barges would be engineered by a maritime engineer/naval architect. *Id*.

Plaintiff further alleged that Plaintiff and Defendants agreed to a Purchase Order Contract ("Purchase Order") on or about August 26, 2014 with a total purchase price of $1,845,000.00 and specifications provided by Defendants for the barges. ECF Dkt. #1-1 at 4. Plaintiff alleged that on or about August 27, 2014, Defendants made the initial payment of $307,000.00 to Plaintiff's Ohio bank. *Id*. Plaintiff averred that it and IBS thereafter sourced equipment and negotiated purchases for cranes, forklifts, and other necessary expenses for the project. *Id*.

Plaintiff alleged in the complaint that on or about September 16, 2014, Plaintiff provided Defendants with the engineered drawings for the barges, and Defendants engaged Manley Brothers, LLC. to review the Purchase Order and the drawings, and that company concluded that the drawings were consistent with the Purchase Order specifications. ECF Dkt. #1-1 at 4-5. Plaintiff averred that on or about October 3, 2014, Manley Brothers, LLC. made suggestions to Plaintiff about upgrades to Defendants' specifications and Plaintiff made those changes and resubmitted its drawings to

3

Defendants on October 23, 2014. *Id.* at 5. Plaintiff alleged that on October 31, 2014, it requested a meeting with Defendants in order to move the process along and on November 5, 2014, a meeting was held with Christopher Norris, Robert Rogers, the maritime engineer/naval architect employed by IBS, Sam Beelman, and two other representatives of Defendants. *Id.* At the meeting, according to Plaintiff, Manley Brothers, LLC. submitted a new comment sheet that they discussed, then they all traveled to the site where the barges would be unloaded. *Id.* Plaintiff alleged that on the drive there, Sam Beelman provided Christopher Norris with a document entitled "Addendum to Purchase Order" and he requested that Norris sign the document, but Norris refused because it would have materially altered the Purchase Order and it contained factual inaccuracies. *Id.* Plaintiff alleges that on or about November 7, 2014, Defendants mailed to it a notice of termination of the Purchase Order. *Id.* at 6.

In Count One of its complaint, Plaintiff alleged that Defendants breached the Purchase Order by wrongfully terminating the Purchase Order with its termination notice as Plaintiff performed its contractual obligations and Defendants failed and refused to perform its contractual obligations. ECF Dkt. #1-1 at 6-7. In Count Two, Plaintiffs alleged a promissory estoppel cause of action, averring that Defendants promised to pay $1,845,000.00 for the fabrication of three barges, Plaintiff reasonably, substantially and foreseeably relied upon the promise to its detriment and it would be unjust if Defendants' promises were not enforced. *Id.* at 7.

On February 23, 2015, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #19. On August 14, 2015, Defendants filed an answer and a counterclaim against Plaintiff. ECF Dkt. #39. Plaintiff filed a reply to the counterclaim on September 2, 2015. ECF Dkt. #41. Defendants subsequently amended their counterclaim on December 7, 2015 to add IBS, Christopher

4

Norris, and Robert Rogers.  ECF Dkt. #59.  Newly added counterclaim parties IBS, Christopher

Norris, and Robert Rogers filed their consent to the undersigned's jurisdiction thereafter.  ECF Dkt.

#48.  Plaintiff, with the newly added counterclaim parties, filed a reply to the amended counterclaim

on January 4, 2016.  ECF Dkt. #66.

On December 7, 2016, Defendants filed a motion for summary judgment as to Plaintiff's

complaint.  ECF Dkt. #84.  On January 20, 2017, Plaintiff filed a brief in opposition to the motion

for summary judgment.  ECF Dkt. #89.  On February 3, 2017, Defendants filed a reply brief.  ECF

Dkt. #92.

## II.    STANDARD OF REVIEW

A court must grant summary judgment "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  In order to show that a fact cannot be or is genuinely disputed, a party must support the

assertion by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits
> or declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials;
> or
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Upon filing a motion for summary judgment, the moving party has the initial burden of

establishing that there are no genuine issues of material fact as to an essential element of the

nonmoving party's claim. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (internal

citation omitted); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n. 12 (6th Cir. 1989). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the moving party relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In response, if the moving party establishes the absence of a genuine issue of material fact, in order to defeat summary judgment, the non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c); 56(e). *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal citation omitted). In this regard, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," but rather, "Rule 56 allocates that duty to the opponent of the motion, who is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379–80 (6th Cir. 2007) (internal citation omitted); *see also Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008) (internal citation omitted). Moreover, the non-moving party must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587; see also *Barr v. Lafon*, 538 F.3d 554, 574 (6th Cir. 2008).

Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor

of the non-moving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87; *see also Anderson*, 477 U.S. at 252.

## III.    LAW AND ANALYSIS

### A.    BREACH OF CONTRACT

Defendants first contend that Plaintiff cannot establish the requisite prima facie elements in order to prevail on a breach of contract claim under Ohio law.  ECF Dkt. #85 at 5-11.  The elements of a breach of contract law under Ohio law are: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach."  *NanoLogix, Inc. v. Novak*, No. 4:13-cv-1000, 2016 WL 1170776, at *7 (Mar. 25, 2016), quoting *Issuer Advisory Grp. LLC v. Tech. Consumer Prods., Inc.*, No. 5:14CV1705, 2015 WL 458113, at *3 (N.D. Ohio Feb. 3, 2015) (quoting *V & M Star Steel v. Centimark Corp*., 678 F.3d 459, 465 (6th Cir. 2012) (citing, among authorities, *Savedoff v. Access Grp., Inc*., 524 F.3d 754, 762 (6th Cir. 2008))).

 "Under Ohio law, a non-breaching party to a contract is excused from complying with conditions of the contract, when the party for whose benefit the condition operates has already materially breached the contract."  *Capital City Energy Grp., Inc. v. Kelley Drye & Warren, LLP*, 975 F. Supp. 2d 842, 860 (S.D. Ohio 2013) (quoting *Jackson v. State Farm Fire & Cas. Co.*, 461 Fed.Appx. 422, 426 (6th Cir. 2012)).  A material breach occurs when a party fails to perform an element of the contract "that is so fundamental to the contract that the single failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform."  *Creative Concrete v. D & G Pools*, No. 07 MA 163, 2008 WL 2609504, at *3 (Ohio Ct.App. June 26, 2008).  Ohio law provides that five factors are considered in determining whether a breach is

7

material: "the extent to which the injured party will be deprived of the expected benefit, the extent to which the injured party can be adequately compensated for the lost benefit, the extent to which the breaching party will suffer a forfeiture, the likelihood that the breaching party will cure its breach under the circumstances, and the extent to which the breaching party has acted with good faith and dealt fairly with the injured party." *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163, 170–71, 583 N.E.2d 1056 (Ohio Ct.App.1990). The mere breach of a contract term by a party who has substantially performed does not relieve the other party from performing the contract. *Kehoe*, 933 F.Supp.2d at 1004, quoting *Hostetler v. Cent. Farm & Garden, Inc*., No. 2010 AP 120046, 2012 WL 439696, at *6 (Ohio Ct.App. Feb. 9, 2012). The breach must be material. *Id*.

The determination of whether a material breach of a contract has occurred is generally a question of fact. *Kehoe Component Sales, Inc. v. Best Lighting Products, Inc*., 933 F.Supp.2d 974, 1005 (S.D. Ohio 2013), citing *Kersh v. Montgomery Developmental Center*, 35 Ohio App.3d 61, 63, 519 N.E.2d 665 (Ohio App. Ct. 1987). However, materiality can be a question of law if the contract itself clearly makes a certain event a material breach. *O'Brien v. Ohio State Univ*., No. 06AP–946, 2007 WL 2729077, at *3 (Ohio Ct.App. Sept. 20, 2007) (internal citations omitted).

## 1.      Performance by Plaintiff and Material Breach

Defendants first contend that Plaintiff cannot establish the second element for its breach of contract claim, that Plaintiff performed or substantially performed its obligations under the Purchase Order. ECF Dkt. #85 at 6. Defendants assert that Plaintiff cannot establish this element because Plaintiff failed to provide the required initial drawings in the time specified in the Purchase Order

8

and Plaintiff failed to submit acceptable drawings that Defendants could approve as the Purchase Order also required.  *Id*.

Defendants point out that the Purchase Order required Plaintiff to submit drawings to them within two weeks of the execution of the contract and first payment.  ECF Dkt. #85 at 6; ECF Dkt. #82-2 at 1.  Defendants assert that the Purchase Order was executed on August 26, 2014 and the first payment was made on August 27, 2014.  ECF Dkt. #85 at 6, citing ECF Dkt. #82-3 at 70. Defendants submit that Plaintiff should have provided the drawings to them by or on September 10, 2014, but Plaintiff delivered the drawings on September 16, 2014.  ECF Dkt. #85 at 6.  Defendants further assert that even when Plaintiff submitted the late drawings, they were met with disapproval and despite Plaintiff's submission of revised drawings attempting to comply with the expectations of Defendants and industry standards, the drawings were never approved and never met the industry standards.  *Id*. at 7.  Defendants submit that the failure to submit timely drawings and to submit drawings that were not approved and noncompliant establishes that Plaintiff neither performed nor substantially performed in order to proceed with its prima facie case of breach of contract.  *Id*. at 3-7.

The Court finds that the Purchase Order required that Plaintiff submit drawings within 2 weeks of execution of the contract and first payment, which occurred on August 26, 2014 and August 27, 2014, respectively, and the drawings were not submitted until September 16, 2014, some 6 days after they were due.  ECF Dkt. #82-3 at 40-43, 70, 92-93; ECF Dkt. #82-4 at 158, 187. Plaintiff admits this in its brief in opposition to the motion for summary judgment.  ECF Dkt. #89 at 9, citing ECF Dkt. #89-2 at 3.

In opposing the motion for summary judgment as to whether it performed or substantially performed, however, Plaintiff argues that a 6-day delay was nominal and did not legally or factually

9

constitute a material breach of the Purchase Order.  ECF Dkt. #89 at 4-5.  Plaintiff further asserts that Defendants did not object to the drawings when they were delivered on September 16, 2014 and thus they are estopped from asserting that the delay in delivery of the drawings constituted a material breach.  *Id.* at 7-8.  Plaintiff also asserts that Defendants' submission of the drawings to their engineer eight days after receiving them from Plaintiff further negates a finding that the delay was a material breach.  *Id.* at 5.

In the instant case, the Purchase Order does indicate that the drawings were to be completed and submitted to Defendants within two weeks of the contract approval and first payment.  ECF Dkt. #89-1 at 1.  However, the Purchase Order does not specifically make the failure to submit the drawings within the two weeks a material breach.  *Id.*  Since the Purchase Order fails to specify that a delay in submitting the drawings constitutes a material breach and Defendants do not otherwise establish that such a delay as a matter of law constitutes a material breach, the Court DENIES Defendants' motion for summary judgment on this issue because genuine issues of material fact surround whether the untimely submission of the drawings constitutes a material breach.

The Court also finds that the trier of fact should determine whether Plaintiff failed to provide Defendants with adequate barge design drawings and/or failed to secure Defendants' approval of the drawings, and whether each or both of these failures, if they exist, constituted a material breach of the Purchase Order.  Defendants contend that their engineer, Mr. McGrady, reviewed the untimely drawings, and ultimately rejected them, finding that they did "not meet the expectations of the undersigned or Beelman personnel."  ECF Dkt. #85 at 6, citing ECF Dkt. #85-3 at 146. Defendants assert that Plaintiff was provided with modifications that were necessary for the barge to be adequately designed and Plaintiff's revised drawings still did not comply "with the industry

10

standard for the design of the barges." ECF Dkt. #85 at 6, citing ECF Dkt. #85-3 at 164. Defendants contend that Mr. McGrady never approved the drawings and experts for both parties opined that Plaintiff's drawings did not comply with industry standards. ECF Dkt. #85 at 6-7, citing ECF Dkt. #89-4 at 125-126 and ECF Dkt. #85-5 at 6. Defendants further assert that the parties met on or about November 5, 2014 to discuss the drawings' alleged deficiencies and omissions, but they could not reach a compromise on Plaintiff's drawings that still contained top deck design issues. *Id*. Defendants posit that on November 7, 2014, Defendants terminated the Purchase Order due to the untimely submission of the drawings, Plaintiff's inability to provide acceptable drawings, and IBS's demonstration of inexperience and lack of understanding of inland river barge design and construction. *Id*.

In response to Defendants' motion for summary judgment on this issue, Plaintiff cites to the deposition testimony of Mr. McGrady, Defendants' own expert, and asserts that he testified that he received a redacted version of the Purchase Order from Defendants and Plaintiff's design submission matched up with the specifications of the Purchase Order. ECF Dkt. #89 at 10 and 18, citing ECF Dkt. #88-5 at 72, 101. Plaintiff also asserts that the changes requested by Defendants and Mr. McGrady were modifications, Plaintiff made those modifications, and Mr. McGrady testified that the modified drawings were very close to completion. *Id*. Plaintiff further cites to Mr. McGrady's deposition testimony where he indicated that he did not review the drawings for compliance with the industry "ABS" standards and he did not agree with the ABS standards as "[t]hey don't make any sense." ECF Dkt. #89 at 19, citing ECF Dkt. #88-5 at 45. Plaintiff also cites to Mr. McGrady's testimony that he did not consider the ABS standards as to the modified drawings as he indicated that "most inland barges are built without rules." ECF Dkt. #89 at 19, citing ECF Dkt. #88-5 at 54.

11

Plaintiff further cites to Defendant Beelman's testimonial admission that going into the November 5, 2014 meeting with Plaintiff, the project was going well enough that Defendants had no plans to terminate the Purchase Order with Plaintiff.  ECF Dkt. #89 at 10, citing ECF Dkt. #88-2 at 190-191.

Based upon the parties' arguments and the testimony of Mr. Beelman, Mr. McGrady, and the other experts, the Court finds that it cannot determine as a matter of law that Plaintiff's drawings were not approved by Defendants and if they were not, whether this constituted a material breach of the Purchase Order.  Thus, the Court finds that Plaintiff has established that genuine issues of material fact exist as to whether Plaintiff substantially performed its obligations under the Purchase Order by providing adequate drawings, whether those drawings were ever approved, and whether the changes requested by Defendants and Mr. McGrady were preferences or required changes in order to conform with industry standards and/or the Purchase Order.  Moreover, because these materials facts are in dispute, the issue of whether a material breach of the Purchase Order existed as to providing adequate drawings and getting required approval must be decided by a jury as well.  Accordingly, Defendants' motion for summary judgment on this issue is DENIED.

### 2.    "Time is of the Essence" contract and Anticipatory Breach

Defendants also move for summary judgment against Plaintiff, asserting that the Purchase Order was a "time is of the essence" contract and Plaintiff anticipatorily breached the contract because it would have been impossible for Plaintiff to deliver the first barge by the December 2, 2014 deadline established in the Purchase Order.  ECF Dkt. #85 at 7-8.  They cite to the testimony of their expert and Plaintiff's own expert who testified that as of the way things stood on November 5, 2014, the barge would not have been able to be delivered by the deadline.  *Id.* at 8, citing ECF Dkt. #85-5 at 8; ECF Dkt. #89-4 at 103.

12

In response, Plaintiff argues that at the time that Defendants terminated the Purchase Order on November 5, 2014, no barges were yet due to be delivered, and therefore Plaintiff did not breach any obligation to timely deliver barges.  ECF Dkt. #89 at 13.  Plaintiff further asserts that Defendants cannot prove that an anticipatory breached because an anticipatory breach requires proof that a party refused to perform its obligations, which Defendants cannot establish, and Defendants never demanded assurances that the barges would be completed if Defendants had reasonable grounds to believe that Plaintiff would not perform under the contract.  *Id.* at 13-14, citing cases.  Plaintiff further contends that substantial evidence exists from which a reasonable jury could find that Defendants were the ones who caused the delays because they wanted modifications and Defendants wanted to terminate the Purchase Order with Plaintiff for reasons other than any alleged non-performance.  ECF Dkt. #89 at 11.  Plaintiff asserts that termination occurred after Plaintiff refused to sign Defendants' addendum to the purchase order that would have materially changed the original terms of the Purchase Order.  ECF Dkt. #89 at 6.  Plaintiff also cites to Mr. Beelman's deposition testimony and posits that Defendants no longer needed the barges as Defendants operated for 25 years from the St. Louis Port Authority Municipal River Terminal ("the Port") prior to entering into the Purchase Order, but in 2014, the Port Authority did not renew its lease with Defendants, so Defendants had to look for a backup plan, which resulted in the decision to purchase barges.  *Id.*, citing ECF 82-2 at 29-42.  Plaintiff submits that after entering into the Purchase Order in August of 2014, the Port Authority subsequently made the Port available for bids again by November of 2014, which is when Defendants terminated the Purchase Order.  ECF Dkt. #89 at 11, citing ECF Dkt. #82-4 at 206-208.  Plaintiff cites to Mr. Beelman's deposition testimony where he agreed that it was worth holding off building barges with Plaintiff or any other manufacturer until

Defendants found out whether the Port Authority accepted their bid, which it ultimately did not. *Id.* at 207-208. Plaintiff also cites to Mr. Beelman's testimony indicating that he did not obtain barges elsewhere after terminating the Purchase Order because uncertainties in the barge business existed at the time. *Id.* at 63.

In addition, Plaintiff describes in its response to the motion for summary judgment how all three barges would operate as one combined unit, and it cites to the testimony of Mr. Shearer, one of Defendants' experts, who testified that he was not aware that there were plans to use the first barge prior to receiving the second and third barges. ECF Dkt. #89 at 10, citing ECF Dkt. #88-4 at 38-39, 55. Plaintiff asserts that the second and third barges were not due for completion until March 25, 2015 and Plaintiff's expert, Mr. Boksa, testified that Plaintiff certainly would have been able to deliver the three barges within that time frame. ECF Dkt. #89 at 10, citing ECF Dkt. #89-2, 89-4 at 102-103.

The Court finds as a matter of law that the Purchase Order was not a "time is of the essence" contract. The law in Ohio is to find that generally, time of performance is not of the essence to a contract, unless it expressed or implied from the nature of the contract or circumstances under which it was negotiated. *Franklin Mgt. Industries, Inc. v. Far More Properties, Inc.*, 25 N.E.3d 416, 421 (Ohio App. 8th Dist. 2014), citing *Brown v. Brown*, 90 Ohio App.3d 781, 784, 630 N.E.2d 763 (Ohio App. 11th Dist.1993), *Mays v. Hartman*, 81 Ohio App. 408, 412, 77 N.E.2d 93 (Ohio App. 1st Dist.1947) and *Green, Inc. v. Smith*, 40 Ohio App.2d 30, 37–38, 317 N.E.2d 227 (Ohio App. 4th Dist.1974). In the instant case, there is no express clause in the Purchase Order indicating that it is a "time is of the essence" contract. ECF Dkt. #82-2. When such an express provision is not specified in the contract, the Court can infer such a provision only "by clear implication from the

14

surrounding circumstances." *SRW Envt'l Servs., Inc. v. Dudley*, No. CA2008-11-282, 2009 WL 2231867, at *3 (Ohio App. 12th Dist. July 27, 2009), quoting *Hall v. U.S. Bank Natl. Assn.*, No. C-040642, 2006 WL 199860, at *2 (Ohio App. 1st Dist. Jan. 27, 2006), unpublished.

Defendants assert that the contract was a "time is of the essence" contract because it contained specific deadlines for providing the initial drawings to Defendants and for delivering each of the barges to Defendants.  ECF Dkt. #85 at 7.  However, as Plaintiff points out, the fact that a contract contains specified dates does not render the contract a "time is of the essence" contract. ECF Dkt. #89 at 11, citing *Shelton v. Twin Twp.*, 30 N.E.3d 1047, 2015-Ohio-1602 (Ohio App. 12th Dist. Apr. 27, 2015).

"Ohio courts are split as to whether and when 'time is of the essence' may be implied in a contract."  *Shelton*, 30 N.E.3d at 1054.  Some Ohio courts imply such a term depending upon the nature of the contract or the circumstances under which it was negotiated, while other Ohio courts have implied that the contract is a "time is of the essence" contract whenever a definite date is fixed for compliance.  *Id*. at 1054-1055, citing *Green, Inc. v. Smith*, 40 Ohio App.2d 30, 37–38, 317 N.E.2d 227 (Ohio App. 4th Dist.1974); *Franklin Mgt. Indus., Inc. v. Far More Properties, Inc.,* 8th Dist., 25 N.E.3d 416, 2014-Ohio-5437 (Ohio App. 8th Dist. 2014); and *Lake Ridge Academy v. Carney*, No. 91CA005063, 1991 WL 215024, *4 (Ohio App. 9th Dist. Oct. 16, 1991), unpublished; *Calabrese v. Vukelic*, No. 94–J–37, 1995 WL 750140, *1 (Ohio App. 7th Dist. Dec. 14, 1995), unpublished, citing *Domigan v. Domigan*, 46 Ohio App. 542, 546, 189 N.E. 860 (Ohio App. 5th Dist.1933). Still other Ohio courts combine the approaches and consider both the nature and circumstances of the negotiation, as well as the fixed date of the contract in determining whether to imply that time is of the essence in the contract.  Shelton, 30 N.E.3d at 1054-1055, citing *Marion*

15

*v. Hoffman*, No. 9–10–23, 2010 WL 3839439 (Ohio App. 3rd Dist. Oct. 4, 2010); *Nippon Life Ins. Co. of Am. v. One Source Mgt., Ltd.*, No. L–10–1247, 2011 WL 1782089 (Ohio App. 6th Dist. May 6, 2011).

      Reviewing both the deadlines in the Purchase Order and the circumstances surrounding negotiation of the Purchase Order, the Court finds as a matter of law that the Purchase Order was not a "time is of the essence" contract.  While the Purchase Order states when the first barge and then second and third barges would be delivered, the deadlines are expressed not in specific dates but in periods of weeks following the date of the execution of the agreement and first payment.  ECF Dkt. #89-1.  The Purchase Order provides that the first barge will be delivered 14 weeks from the date of the executed agreement and receipt of the initial payment and the second and third barges will be delivered 30 weeks from the date of receipt of the first payment.  *Id*.  Moreover, the Financial Terms section of the Purchase Order also seems to support a more flexible deadline as it sets forth payments for each barge in terms of days from the execution of the Purchase Order and specifically states that "Payment Schedule will be adjusted to fit actual production schedule," which implies that the production schedule could be adjusted.

      In addition, the circumstances surrounding the negotiation of the contract does not support the finding of a "time is of the essence" contract as Defendants point to no evidence supporting such a finding. And while Mr. Norris testified that he was aware that Defendants wanted the barges built "as soon as possible," ECF Dkt. #88-1 at 11, and Norris was unable to secure other manufacturers to build the barges within "any kind of reasonable delivery time," no indication exists in the record as to the exact time that Defendants requested for completion of the project from the surrounding circumstances of negotiation or the Purchase Order itself.

For these reasons, the Court finds as a matter of law that the Purchase Order was not a "time is of the essence" contract and DENIES Defendants' motion for summary judgment on the issues of breach and anticipatory breach of contract by Plaintiff, as genuine issues of material fact require that these issues be presented to the jury.

### 3.        Damages

Defendants also move for summary judgment on the damages element of Plaintiff's breach of contract claim, asserting that Plaintiff's lost profits theory is remote and speculative. ECF Dkt. #85 at 10.  Defendants correctly assert that in order to recover lost profits for a breach of contract under Ohio law, a plaintiff must show that "(1) the profits were within the parties' contemplation at the time the contract was made; (2) the loss of the profits is the probable result of the breach of contract; and (3) the profits are not remote and speculative and may be shown with reasonable certainty." *Ask Chemicals, LP. v. Computer Packages*, Inc. 593 Fed. App'x 506, 511 (6th Cir. 2014), quoting *City of Gahanna v. Eastgate Props., Inc.*, 36 Ohio St.3d 65, 521 N.E.2d 814, 817( 1988).

In order to recover lost profits in Ohio, "the amount of the lost profits, as well as their existence, must be demonstrated with reasonable certainty." *Ask Chemicals*, 593 Fed. App'x at 511, quoting *Gahanna*, 521 N.E.2d at 818.  Lost profits calculations must be based on facts.  *Ask Chemicals*, 593 Fed. App'x at 511, quoting *UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.*, 147 Ohio App.3d 382, 770 N.E.2d 1068, 1083 (2001).

Defendants attack the third element of the lost profits analysis, asserting that Plaintiff cannot reasonably show that its lost profits were not remote and speculative.  ECF Dkt. #85 at 10-11. Defendants contend that Plaintiff cannot produce a breakdown of its expenses and neither Plaintiff nor Mr. Rogers had ever designed or built a barge before entering into the instant contract and

therefore had no independent knowledge or information to support its lost profits claim.  ECF Dkt. #85 at 10-11.  Defendants cite to Mr. Norris' testimony that he simply received numbers and information from Mr. Rogers for the Purchase Order, and neither Mr. Norris nor Mr. Rogers had prior experience building barges and Mr. Rogers testified that he came up with prices in the Purchase Order by calling people in the industry to obtain welding and steel costs, but he could not identify those people at his deposition.  *Id.* at 11-12, citing ECF Dkt. #82-3 at 35-36, 224; ECF Dkt. #82-6 at 32-33; ECF Dkt. #85-2 at 4-5.  Defendants cite to a number of Sixth Circuit and Ohio state court cases in support of its proposition that detailed evidence is required in order to support a lost profits assertion and the failure to provide a breakdown of production expenses, such as parts, labor, and overhead is improper and will result in a lost profits calculation being deemed founded on facts not in evidence.  ECF Dkt. #85 at 10, citing *Ask Chemicals*, 593 Fed. App'x at 511; *Auto Indus. Supplier ESOP v. Ford Motor Co.,* 435 Fed. App'x 430 (6th Cir. 2011); *Loadman Grp., LLC. v. Banco Popular N. Am.,* No. 4:10CV1759LIO, 2013 WL 1154528, (N.D. Ohio Mar. 19, 2013), unpublished; *Gahanna*, 36 Ohio St.3d at 68; *AGF, Inc. v. Great Lakes Heat Treating Co.*, 51 Ohio St.3d 177, 555 N.E.2d 634, 640 (1990); *Endersby v. Schneppe*, 73 Ohio App.3d 212, 596 N.E.2d 1081, 1084 (Ohio App. 3rd Dist. 1991); *Kinetico, Inc. v. Indep. Ohio Nail Co.,* 19 Ohio App.3d 26, 28, 482 N.E.2d 1345 (Ohio App. 8th Dist. 1984).

Plaintiff cites to caselaw indicating that lost profits damages "often require conjecture" and "need not be proven with mathematical precision."  ECF Dkt. #89 at 16, quoting *Miami Packaging, Inc. v. Processing Sys., Inc*., 792 F.Supp.2d 560, 566 (S.D. Ohio 1991)(citation omitted) and *Eggert v. Meritain Health, Inc*., 428 Fed. App'x 558, 566 (6th Cir. 2011).  Plaintiff notes that this uncertainly in damages is "why Ohio courts consistently hold that the issue of whether damages are

18

too remote or whether they are reasonably certain is a question of fact for the jury."  ECF Dkt. #89 at 17, citing *Miami Packaging,* 792 F.Supp.2d at 566*; Kosier v. DeRosa*, 169 Ohio App.3d 150, 862 N.E.2d 159, 2006-Ohio-5114 (Ohio App. 6th Dist. 2006); *WRG Servs., Inc. v. Eliers*, No. 2008-L0057, 2008 WL 4876868, 2008-Ohio-5854 (Ohio App. 11th Dist. Nov. 7, 2008).

Many of the cases cited by Defendants involve the courts finding that *future* lost profits were too speculative and remote.  ECF Dkt. #88-1 at 195, citing *Ask Chemicals*, 593 Fed. App'x 506; *Auto Industries Supplier Emp. Stock Ownership Plan,* 435 Fed. App'x 430; *AGF*, 555 N.E.2d 634; *Kinetico*, 482 N.E.2d 1345; *Loadman*, 2013 WL 1150125.  The instant case is not one where a loss of future profits is alleged as Plaintiff requests damages only resulting from an alleged breach of the Purchase Order by Defendants.

Further, the Court finds that Plaintiff presents sufficient evidence concerning its damages and adequately meets its reciprocal burden of countering Defendants' lost profits assertions. Defendants assert that Plaintiff has "utterly failed to present any reliable evidence to support a calculation of lost profits" and the lost profits theory is too remote and speculative.  ECF Dkt. #85 at 11-12.  Defendants submits that neither Mr. Norris nor Mr. Rogers ever designed or built a barge before and Mr. Norris did not know the bases for Plaintiff's pricing calculations in the Purchase Order as he testified that he relied upon Mr. Rogers for the pricing but Mr. Rogers could not recall any of the individuals that he spoke to in order to set the prices in the Purchase Order.  ECF Dkt. #85 at 11.

Defendants are correct that Mr. Norris had never built a barge before.  ECF Dkt. #82-3 at 35, 45; ECF Dkt. #82-6 at 32.  However, Mr. Norris indicated in his deposition and Declaration that he is the Chief Executive Officer of Plaintiff, a long-time manufacturer and supplier for the handling

19

and barge unloading industries, and he has been extensively involved in the design of large projects relating to heavy equipment and machinery, including fabrication, welding, design, pricing steels and material, and estimating job projects since 1984.  ECF Dkt. #82-3at 11; ECF Dkt. #88-1 at 4; ECF Dkt. #89-2.  And while Mr. Norris testified that the basis for the $1.44 million price for manufacturing the barges was calculated from information provided by Mr. Rogers, Mr. Norris did in fact testify as to the basis for some of the calculations, including raw materials and labor and associated costs.  ECF Dkt. #82-3 at 224-225; ECF Dkt. #88-1 at 195.  For instance, he testified that the material cost was $.49 per pound at the time of they would have been manufacturing the barges. *Id*. at 225.  He also explained that the overhead costs of $219,000.00 included money spent getting ready to manufacture the barges and they could provide itemization of that.  *Id.* at 228.  It was noted that the $219,000.00 included outlay for auction materials.  *Id*. at 229. Mr. Norris also explained that his role was to broker the deal to build barges between Mr. Rogers and Defendants. ECF Dkt. #82-3 at 41-42.  He also testified that he made sure that Mr. Beelman knew that IBS was a startup company and after Mr. Beelman gave the verbal order to Mr. Norris concerning building the barges, Mr. Norris wanted to become a part of IBS so he bought into IBS as a partial owner in lieu of his commission for the barges.  *Id.* at 42.

As to Mr. Rogers, Defendants assert that he also had no prior experience building barges and while he testified that he called various people to get information about welding, steel costs and other costs that he put into the Purchase Order, he could not specifically identify who those people were and did not provide any further explanation for his calculations.  ECF Dkt. #85 at 11-12.  Mr. Rogers did testify that the instant case was his first experience designing and building a barge from scratch.  ECF Dkt. #85-2 at 5.  However, he testified that he took college classes in industrial

engineering and in 2005, he acquired an interest in a company that did marine construction, where he performed bidding, managed the staff and projects, and brought on other contractors for dredge projects, bridge work, and reef development.  ECF Dkt. #88-3 at 3, 17-18.  He also did consulting work for some marine construction companies and did some building for them and sold them equipment.  *Id*. at 19-20. Moreover, Mr. Norris testified that when Mr. Rogers requested the opportunity to bid in the barge job for Defendants, Mr. Rogers informed him that Mr. Rogers' plan was not to build the barges himself but to set up a yard, hire an engineering firm and subcontract the labor to get the barges built.  ECF Dkt. #82-3 at 34-35.  Mr. Norris also testified that Mr. Rogers owned barges and was well-versed on barge design because he owned barges and made modifications to them.  *Id.* at 35.  He also explained that Mr. Rogers had been in contact with Fritz Schmid, a naval architect, concerning the design and building of the barges.  *Id*. at 36-37.  Contrary to Defendants' assertion, Mr. Rogers did specifically identify at least one person that he spoke to in determining the prices to put in the original Purchase Order.  ECF Dkt. #85-2 at 4-5.  He identified Willard Johnson as one of the people with whom he communicated about some of the pricing that he put in the Purchase Order, and he explained that he also communicated with different people and steel companies about how may feet can a welder weld in an hour, general and steel platform prices on a per-pound basis, and steel costs.  *Id*. at 3-5.  Mr. Norris also testified that Mr. Rogers had been in contact with Mr. Schmid, the naval architect, concerning designing and building the barges.  ECF Dkt. #82-3 at 36.

Based upon the caselaw and the evidence presented by Plaintiff, the Court DENIES Defendants' motion for summary judgment on the damages claim.  Viewing the facts in a light most

favorable to Plaintiff, Plaintiff has presented sufficient facts to permit a jury to determine the issue of lost profits suffered by Plaintiff, if any, resulting from any breach of contract.

### B.        PROMISSORY ESTOPPEL

Defendants also move for summary judgment on Plaintiff's claim of promissory estoppel, asserting that Plaintiff has failed to establish a prima facie case for promissory estoppel because it is not applicable where the parties' claims are governed by a valid contract.  ECF Dkt. #85 at 12, citing *Right-Now Recycling, Inc. v. Ford Motor Credit Co., LLC.*, No. 15-3621, 264 Fed. App'x 554, 558 (6th Cir. Mar. 23, 2016) and *Olympic Holding Co., LLC. v. Ace Ltd*., 122 Ohio St. 3d 89, 909 N.E.2d 93, 2009-Ohio-2057 (2009).  Defendants point to the fact that the parties acknowledge that the Purchase Order is a valid and enforceable contract and reason that a promissory estoppel claim cannot exist as a matter of law.  ECF Dkt. #85 at 12.

Plaintiff did not address this assertion in its memorandum in opposition to the motion for summary judgment.  ECF Dkt. #89.

The Court agrees that as a matter of law, Plaintiff's promissory estoppel claim cannot stand where a valid contract exists.  Ohio law provides that promissory estoppel does not apply when a valid contract governs the claims of the parties.  *See Right-Now Recycling*, 264 Fed. App'x at 558, citing *Gibson Real Estate Mgmt*., *Ltd. v. Ohio Dep't of Admin. Servs*., 2006 WL 322304, at *3 (Ohio Ct.Cl. Jan. 4, 2006); *Olympic Holding Co. v. ACE Ltd*., 122 Ohio St.3d 89, 909 N.E.2d 93, 100 (2009)("The doctrine of promissory estoppel comes into play where the requisites of contract are not met, yet the promise should be enforced to avoid injustice.") (quoting *Doe v. Univision Television Group, Inc.*, 717 So.2d 63, 65 (Fla.App.1998)); *Hughes v. Oberholtzer*, 162 Ohio St. 330,

22

123 N.E.2d 393, 396 (1954) ("It is generally agreed that there can not [sic] be an express agreement and an implied contract for the same thing existing at the same time."); *see also McGovern v. First Housing Development Corp.*, No. 1:13CV2460, 2015 WL 5749837, at *8 (N.D. Ohio Sept. 30, 2015), unpublished, quoting *O'Neill v. Kemper Ins. Companies,* 497 F.3d 578, 583 (6th Cir.2007) (citing *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir.1996))("In Ohio, '[w]here the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel....'").  An implied-in-law or "quasi-contract,"  is "neither necessary nor appropriate when an express contract governs the dispute between the parties." *McGovern*, 2015 WL 5749837, at *8.

Here, Defendants acknowledge that the Purchase Order is a valid and enforceable contract.  ECF Dkt. #85 at 12.  Plaintiff also acknowledges that the Purchase Order is a valid and enforceable contract.  ECF Dkt. #89 at 16.  Plaintiff's entire 26-page response to Defendants' motion for summary judgment addresses only issues concerning terms and conditions in the Purchase Order and mentions nothing about promissory estoppel.  *Id.* at 1-26.  Plaintiff's assertions concern substantial performance of the Purchase Order, who is the non-breaching and breaching parties to the Purchase Order, and alleged damages emanating from the breach of the Purchase Order.  *Id.*

Moreover, in its memorandum in support of its motion for summary judgment as to Defendants' counterclaims, Plaintiff specifically states that "[t]his matter is a contract dispute between Norris Mfg. and Beelman."  ECF Dkt. #83-1 at 3.  In its reply in support of its motion for summary judgment on Defendants' counterclaims, Plaintiff asserts that "[t]his is, and always has been, a contract dispute between Norris Mfg. and Beelman."  ECF Dkt. #91 at 7.

Upon review of the record and Plaintiff and Defendants' acknowledgments and agreement that the Purchase Order governs this dispute between the parties, the Court concludes as a matter of law that Plaintiff's promissory estoppel claim cannot stand.  Accordingly, the Court GRANTS Defendants' motion for summary judgment and DISMISSES WITH PREJUDICE Plaintiff's claim for promissory estoppel in the instant case.  ECF Dkt. #84.

**IV.**     **CONCLUSIONS**

For the above reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.  ECF Dkt. #84.  The Court GRANTS Defendants' motion for summary judgment as to Plaintiff's claim for promissory estoppel and DISMISSES WITH PREJUDICE Plaintiff's promissory estoppel claim.  *Id*.  However, the Court DENIES all other aspects of Defendants' motion for summary judgment.  *Id*.

DATE: March 17, 2017                              */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE