UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

C. NORRIS MANUFACTURING, LLC.,  )      CASE NO.  5:14CV2797
                             )
           Plaintiff,  )      MAGISTRATE JUDGE
                             )      GEORGE J. LIMBERT
                             )
         v.  )      <u>MEMORANDUM OPINION & ORDER</u>
                             )
BRT HEAVY EQUIPMENT, LLC. et al.,  )
                             )
          Defendants.  )

This matter is before the Court upon a motion for partial summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure by Plaintiff/Counterclaim Defendants Christopher Norris, ("Mr. Norris") Robert Rogers ("Mr. Rogers"), and International Barge & Steel, LLC, ("IBS") (collectively "Counterclaim Defendants") against amended counterclaims filed against them by Defendants/Counterclaim Plaintiffs BRT Heavy Equipment, LLC., doing business as Beelman Heavy Equipment, LLC. and Beelman River Terminals, Inc.'s ("BRT")(collectively "Counterclaim Plaintiffs").  ECF Dkt. #82.  Plaintiff/Counterclaim Defendant C. Norris Manufacturing ("CNM") has filed a separate motion for summary judgment incorporating the same facts, law and arguments asserted by Counterclaim Defendants against the same amended counterclaims made by Counterclaim Plaintiffs.  ECF Dkt. #83.

For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Counterclaim Defendants' and Counterclaim CNM's motions for partial summary judgment.  ECF Dkt. #s 82, 83.

I.      **FACTUAL AND PROCEDURAL HISTORY**

On December 19, 2015, BRT removed to this Court a complaint filed in the Stark County Court of Common Pleas against it by CNM alleging a breach of contract and promissory estoppel. ECF Dkt. #1-1.  Upon removal, Counterclaim Plaintiffs thereafter filed an answer to the complaint and alleged counterclaims against Mr. Norris, CNM, Mr. Rogers and IBS.  ECF Dkt. #38. Counterclaim Defendants moved to dismiss several of the counterclaims for failure to state claims upon which  relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Court denied the motions as moot on December 10, 2015 after Counterclaim Plaintiffs filed an amended counterclaim that is the subject of the instant motions for partial summary judgment against Counterclaim Defendants.  ECF Dkt. #s 47, 49, 59.

In the amended counterclaim, Counterclaim Plaintiffs averred that BRT uses work barges in its operations at various port facilities and it decided to procure spud barges to increase its capacity to handle additional materials and other products at in-land port facilities in Illinois.  ECF Dkt. #59 at 9.  They alleged that Mr. Norris, a representative of CNM, contacted Mr. Beelman, a representative of BRT, and inquired about submitting a proposal to design and construct the additional spud barges.  *Id*.

Counterclaim Plaintiffs further alleged that Mr. Norris had no experience in designing and manufacturing barges, but he advised Mr. Beelman that he knew Mr. Rogers and Mr. Rogers had "extensive experience" in the barge industry.  ECF Dkt. #59 at 3.  They averred that Mr. Norris told Mr. Beelman that he and Mr. Rogers would form or had formed IBS to design and manufacture spud barges and Mr. Rogers had experience with barges for use in salt water applications even though he

2

had not designed or constructed this type of inland-river barge. *Id.* Counterclaim Plaintiffs alleged that Mr. Norris and Mr. Rogers formed IBS on August 22, 2014 and on that same date, Mr. Norris vouched to Mr. Beelman about Mr. Rogers' competence and capacity to perform and guaranteed his performance. *Id*.

Counterclaim Plaintiffs further averred that on or about August 22, 2014, in order to induce Mr. Beelman into the barge contract, Mr. Norris and Mr. Rogers told Mr. Beelman that Mr. Rogers had "extensive experience" with barges and that IBS would "be hiring the necessary people to design and build the contemplated barges." ECF Dkt. #59 at 3. They further alleged that also as an inducement into the contract, Mr. Norris and Mr. Rogers promised Mr. Beelman that they would work with a professional engineer to develop the barge designs and all designs would be stamped and approved by that engineer. *Id*. at 3.

Counterclaim Plaintiffs further alleged that about the same time, Mr. Beelman told Mr. Norris about his distrust and discomfort with doing business with Mr. Rogers and IBS. However, in order to induce Mr. Beelman into signing the Purchase Order that is the contract at issue in this case, Mr. Norris promised Mr. Beelman that the contract would be with CNM and all money paid would be kept in a separate bank account, controlled exclusively by Mr. Norris. ECF Dkt. #59 at 3-4. Counterclaim Plaintiffs averred that on August 26, 2014, Mr. Norris and Mr. Beelman entered in the Purchase Order contract for the design and manufacture of three barges and Mr. Beelman agreed to pay $307,000.00 as an initial payment. *Id*. at 4. Counterclaim Plaintiffs alleged that Mr. Beelman wired the payment to Mr. Norris on August 27, 2014, and on or about September 3, 2014, $50,000.00 of that money was transferred out of the Norris bank account and into an account in the name of IBS. *Id.* They further alleged that in September and November of 2014, the only

3

transactions made in the IBS bank account were transfers of the initial payment from Norris and transfers into the personal account of Mr. Rogers. *Id.* at 4-5. They averred that the funds transferred to Mr. Rogers' personal account were used to pay for trips to Nassau, Bahamas, bar tabs, and other expenses wholly unrelated to the barge contract. *Id.* at 5-6.

Counterclaim Plaintiffs also averred in their amended counterclaim that as of September 29, 2014, Mr. Norris knew that Mr. Beelman's initial payment money was not being properly used even though Mr. Norris represented to Mr. Beelman on that date that Norris set up a separate bank account for the Purchase Order, his money was "safe," and that none of the Purchase Order money would be mixed with "other company" money and would be used solely for expenses relating to the completion of the barges ordered by BRT. ECF Dkt. #59 at 3-4. They alleged that Mr. Norris' statements were false when he made them and furthered the fraudulent scheme to defraud Mr. Beelman and BRT. *Id.* at 6. They averred that Mr. Norris knew that at least $26,000.00 of the initial payment was mixed with other Norris Manufacturing Company money and knew or should have known that at least $50,000.00 was transferred to IBS and then to Mr. Rogers' personal account. *Id.* Counterclaim Plaintiffs further alleged that Mr. Norris failed to disclose that at least $84,718.10 of the payment money was already spent on or around September 15, 2014. *Id.*

Counterclaim Plaintiffs further alleged that CNM failed to perform as required by the Purchase Order as they submitted the initial drawings on September 16, 2014 when they were due on September 10, 2014. ECF Dkt. #59 at 7. Further, they averred that the drawings that were submitted were deemed deficient and Mr. Beelman's engineer did not approve revised drawings thereafter submitted by CNM. *Id.* at 7-8.

4

Counterclaim Plaintiffs also allege that on November 5, 2014, Mr. Beelman met with Mr. Norris and Mr. Rogers, on behalf of CNM and IBS, and told Mr. Beelman that it would cost an additional $100,000.00 per barge to complete the design and manufacturing of the three barges. ECF Dkt. #59 at 8.  They allege that on November 6, 2014 and November 7, 2014, a representative from IBS called Mr. Beelman and requested information from other companies that provided quotes to him for the barges, including the materials lists, in order to help IBS in the design and engineering of the barges.  *Id.*  Counterclaim Plaintiffs allege that due to the untimely submission of the drawings, the repeated submission of barge drawings that were deficient, and the representations and comments from Mr. Norris, Mr. Rogers and representatives of IBS, Mr. Beelman provided a written notice of immediate termination of the Purchase Order to Norris as he concluded that CNM, Mr. Norris, Mr. Rogers and IBS lacked the knowledge and expertise to build inland-river spud barges. *Id.*  They further averred that due to these actions and inactions, as well as the request for price increases, Mr. Beelman lost all confidence in Counterclaim Defendants ability to build the barges and to meet the Purchase Order deadlines.  *Id.* at 9.  Counterclaim Plaintiffs further alleged that IBS is a sham company as it was formed to induce and deceive Mr. Beelman into entering into the Purchase Order and although Mr. Norris represented that he and Mr. Rogers would be forming IBS, Mr. Norris' name is not listed on the company, but rather the names of Mr. Rogers and Mr. Norris' wife are listed.  *Id.* at 10.  They further alleged that IBS had no formal meetings, no documentation showing its ownership structure, and it commingled its funds with CNM and Mr. Rogers.  *Id.*

As a result of these alleged facts, Counterclaim Plaintiffs set forth seven claims for relief: declaratory judgment against CNM to determine the parties' rights and duties under the Purchase Order (Count I),  breach of contract against CNM (Count II), fraud/fraudulent inducement against

5

CNM , Mr. Norris, Mr. Rogers, and IBS (Count III), negligent misrepresentation against CNM, Mr. Norris, Mr. Rogers, and IBS (Count IV), conversion against CNM, Mr. Norris, Mr. Rogers, and IBS (Count V), unjust enrichment against CNM, Mr. Norris, Mr. Rogers, and IBS (Count VI), and piercing the corporate veil against Mr. Norris and Mr. Rogers (Count VII).  ECF Dkt. #59 at 11-20.

On January 4, 2016, Counterclaim Defendants filed a motion to dismiss Counterclaim Plaintiff's amended counterclaims for fraud/fraudulent inducement, negligent misrepresentation, conversion, unjust enrichment and piercing the corporate veil.  ECF Dkt. #65.  Counterclaim Plaintiffs filed a response and Counterclaim Defendants filed reply briefs.  ECF Dkt. #s 70, 72.  On August 1, 2016, the Court denied Counterclaim Defendants' motion to dismiss.  ECF Dkt. #76.

On December 7, 2016, Counterclaim Defendants Mr. Norris, Mr. Rogers, and IBS filed the instant motion for partial summary judgment, requesting that the Court grant summary judgment in its favor and dismiss as a matter of law Counterclaim Plaintiffs' amended counterclaims of fraud/fraudulent inducement (Count III), negligent misrepresentation (Count IV), conversion (Count V), unjust enrichment (Count VI), and piercing the corporate veil (Count VII).  ECF Dkt. #82.  On the same date, Counterclaim Defendant CNM filed the instant motion for partial summary judgment to dismiss the same amended counterclaims.  ECF Dkt. #s 82, 83.

On January 20, 2017, Counterclaim Plaintiffs filed a brief in opposition to the motions for partial summary judgment.  ECF Dkt. #88.  On February 3, 2017, Counterclaim Defendants filed a reply brief.  ECF Dkt.#91.

On March 17, 2017, the Court granted in part and denied in part a motion for summary judgment filed by BRT against CNM, who had asserted claims for breach of contract and promissory estoppel against BRT concerning the Purchase Order.  ECF Dkt. #s 1, 84, 96, 97.  The Court granted

6

summary judgment and dismissed CNM's claim of promissory estoppel, but denied BRT's motion for summary judgment on CNM's breach of contract claim against BRT.  ECF Dkt. #s 96, 97.

## II.  LAW AND ANALYSIS

### A.  Fraud, Fraudulent Inducement and Negligent Misrepresentation (Counterclaim Counts III and IV)

Counterclaim Defendants first contend that they are entitled to summary judgment on Counterclaim Plaintiffs' fraud, fraudulent inducement, and negligent misrepresentation claims because Counterclaim Plaintiffs cannot establish all of the elements of those claims.  ECF Dkt. #82-1 at 12-24; ECF Dkt. #83-1 at 2-4.  They cite to Mr. Beelman's deposition testimony, Ohio law holding that tort claims must fail when they are "factually intertwined" with breach of contract claims, and Ohio law requiring that damages from the alleged fraud must be separate from breach of contract damages.  *Id.*

The parties agree that the elements for a claim for fraud and fraudulent inducement under Ohio law are:

> (1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*See C.Norris Manufacturing, LLC. v. BRT Heavy Equipment, LLC.*, No. 5:14CV2797, 2016 WL 4079752, at *3 (N.D. Ohio 2016), citing *HSBC Bank USA, Nat'l Trust Co. v. Teagarden*, 6 N.E.3d 678, 2013-Ohio-5816 (Ohio App. Ct. 11th Dist. 2013) (citation omitted); *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 462 N.E.2d 407, 10 O.B.R. (1984), quoting *Friedland v. Lipman*, 68 Ohio App.2d

7

255, 429 N.E.2d 456, 22 O.O.3d 422 (1980);  ECF Dkt. #82-1 at 6-7; ECF Dkt. #83-1 at 2; ECF Dkt. #88 at 11.

Counterclaim Defendants assert that Counterclaim Plaintiffs cannot establish that they made false representations to Mr. Beelman in order to induce him into entering the Purchase Order.   ECF Dkt. #82-1 at 12-14; ECF Dkt. #83-1 at 2.  They cite to Mr. Beelman's deposition testimony where he indicated that prior to the Purchase Order being signed, neither Mr. Norris nor Mr. Rogers lied to him or made any false misrepresentations.  *Id.*, citing ECF Dkt. #82-4 at 92-93.  In opposing the motion for summary judgment, Counterclaim Plaintiffs cite to other portions of Mr. Beelman's testimony that they assert establishes a genuine issue of material fact as to whether false misrepresentations were made.  ECF Dkt. #88 at 12-14.  They first cite to parts of Mr. Beelman's testimony where he stated that Mr. Norris and Mr. Rogers told him that they were fully qualified to manufacture and design barges, and Mr. Rogers had extensive barge background and experience and had been around barges his whole life.  *Id.* at 13, citing ECF Dkt. #82-4 at 88-91.

The Court finds that the assertions alleged by Counterclaim Plaintiffs do not rise to the level of false misrepresentations upon which Mr. Beelman justifiably relied.  While Mr. Beelman testified that Mr. Norris mentioned Mr. Rogers as someone who could design and manufacture the barges that Mr. Beelman desired, Beelman also testified that Mr. Norris never suggested prior to the Purchase Order that he, CNM, Mr. Rogers, or IBS could or would design or build the barges that were the subject of the Purchase Order and Mr. Beelman knew prior to entering into the Purchase Order that none of the Counterclaim Defendants would be designing or manufacturing the barges but would be overseeing the project and hiring the necessary people to make sure that the barges were designed and built properly.  ECF Dkt. #82-4 at 88-92.  Moreover, Mr. Beelman also testified

8

that he did not believe that Mr. Norris or Mr. Rogers lied to him or made false representations to him before he signed the Purchase Order.  *Id*. at 92-93.  When counsel asked him at deposition to identify the  alleged false misrepresentations that had occurred before he signed the Purchase Order, Mr. Beelman indicated that he misunderstood counsel's question about the misrepresentations, indicating that he did not believe that Mr. Norris or Mr. Rogers "lied" to him prior to signing the Purchase Order.  *Id*.  The following testimony was had between Mr. Beelman ("A") and counsel for Counterclaim Defendants ("Q):

> Q. Okay. Did Chris Norris ever tell you anything prior to signing the contract that you believe today is a false representation?
>
> A. Yes.
>
> Q. Okay. Tell me every false  representation that you believe Norris made prior to contract.
>
> A. Give me a copy of the contract, please.
>
> Q. The purchase order?
>
> A. Yes.
>
> Q. Okay, but first of all, I'm asking --I'll show that to you. I'm asking: Prior to the contract, so prior to the date that –
>
> A. Oh, prior to the contract?
>
> Q. Yes, so there were discussions?
>
> A. Oh, excuse me. I –
>
> Q. That's okay. There were discussions and negotiations leading up to the execution of the contract, right?
>
> A. Oh, you know, I misunderstood, I  apologize. I don't know that he ever lied to me prior to the contract being signed.

9

Q. Okay. And the same with Rob Rogers, you don't believe he ever lied to you prior to the contract being signed?

A. That is correct.

Q. Okay. And am I correct that you were going to point to the contract because any false representations that you're alleging in this case you believe can be found in that contract document?

A:MR. NALLY: Objection.

A. I don't know that they'll all be limited to that contract, but there's plenty in that contract that I can -- that I can name. I think there's others besides what's on paper.

Q. Okay. Tell me any other false representations that you believe, we'll start with Chris Norris, that Chris Norris made to you at any point in time that are not contained within the contract.

A. That are not contained? Chris told me that we would establish – that he would establish an escrow account and that we would -- absolutely none of the money, not one dime, would leave their -- if it were not being used to build our barges, that he would secure that money as if it were his own.

Q. And it was, wasn't it? It was Norris Manufacturing's money, right?

A. Not really. They never earned it.

Q. But once you paid -- you made one payment on this contract, correct?

A. Yes.

Q. And that was $307,500?

A. Yes.

Q. You'd agree with me that once you paid that it's no longer money of Beelman

River Terminals or Beelman Heavy Equipment?

MR. NALLY: Objection.

A. I disagree.

10

ECF Dkt. #82-4 at 92-94. Based upon Mr. Beelman entering into the Purchase Order knowing that CNM, Mr. Norris, Mr. Rogers and IBS had never designed or built barges before and were not going to design and build the barges that were the subject of the Purchase Order, and his testimony that no misrepresentations occurred prior to entering the Purchase Order, the Court GRANTS summary judgment in favor of Counterclaim Defendants as Counterclaim Plaintiffs cannot establish a false material representation upon which Counterclaim Plaintiffs justifiably relied upon in entering the Purchase Order. In addition, "parties may not prove fraud by claiming that the inducement to enter into the contract was a promise that was within the scope of the integrated agreement but was ultimately not included within it." *Robins v. Global Fitness Holdings, LLC*., 838 F.Supp.2d 631, 646-647 (N.D. Ohio 2012), citing *Paragon Networks, Intern. v. Macola, Inc*., No. 9–99–2, 1999 WL 280385, at *4 (Ohio App. 3 Dist.1999)(citing *Busler v. D & H Mfg., Inc*., 81 Ohio App.3d 385, 390, 611 N.E.2d 352 (Ohio App. 10 Dist.1992) and *Wall v. Firelands Radiology, Inc*., 106 Ohio App.3d 313, 324, 666 N.E.2d 235 (1995)). Accordingly, the Court dismisses with prejudice Counterclaim Plaintiffs' claims of fraud and fraudulent inducement based upon alleged statements made by Mr. Norris and Mr. Rogers concerning their barge experience and qualifications.

As to Counterclaim Plaintiffs' claim of fraud concerning the separation of Purchase Order monies, safeguarding those monies and using the monies only for barge-related expenses, Mr. Beelman's deposition testimony also leads the Court to conclude that Counterclaim Defendants are entitled to summary judgment on these claims as well. Counterclaim Defendants assert that no evidence exists that Mr. Rogers made any representation to Counterclaim Plaintiffs concerning the Purchase Order payments. ECF Dkt. #82-1 at 11. The Court agrees as Counterclaim Plaintiffs present no evidence establishing a genuine issue of material fact that Mr. Rogers was involved in

discussions concerning the Purchase Order payments.  Nor do Counterclaim Plaintiffs present any evidence establishing the existence of a genuine issue of material fact concerning any statements made by IBS concerning Purchase Order payments.  In fact, the numerous "misrepresentations" that Counterclaim Plaintiffs present in their brief in opposition to the motion for partial summary judgment discuss statements allegedly made by Mr. Norris concerning payments, separate bank accounts and use of Counterclaim Defendants' money.  ECF Dkt. #88 at 13-14.  Moreover, the Purchase Order contract mentions only CNM as guaranteeing the requirements of the projects and the terms and conditions of the Purchase Order.  ECF Dkt. #89-1 at 1.  Accordingly, the Court grants summary judgment in favor of Mr. Rogers and IBS as to Counterclaim Plaintiffs' claims of fraud concerning the handling of Purchase Order monies.

As to Mr. Norris and CNM, Counterclaim Plaintiffs assert that Mr. Norris made false representations when he stated that CNM would maintain a separate bank account for the Purchase Order monies, none of Counterclaim Defendants' money would leave that account unless it was used to build barges, the Purchase Order money would be safe and secure, and Mr. Norris would personally account for every dime spent of the money.  ECF Dkt. #88 at 13-14.  Counterclaim Defendants assert on summary judgment that none of these financial conditions were discussed prior to entering into the Purchase Order, none of them are present in the Purchase Order, except that CNM was guaranteeing the quantities, terms and conditions of the Purchase Order, and it was not until after the Purchase Order was signed that Mr. Beelman began making demands concerning the Purchase Order monies.  ECF Dkt. #82-1 at 12.  They cite to Mr. Beelman's deposition testimony where he stated that the Purchase Order never required the separate account and safeguarding and

CNM never agreed after the Purchase Order was executed that every expenditure would have to be approved by Mr. Beelman before it was made.  *Id.*, citing ECF Dkt. #88-2 at 97.

In response to the motion for partial summary judgment, Counterclaim Plaintiffs cite to deposition testimony where Mr. Norris indicated that he established a separate bank account but allowed money to be transferred back into the CNM main operating account and then transferred $50,000.00 to a bank account for IBS over which neither Mr. Norris nor CNM had control, and unauthorized expenditures were made.  ECF Dkt. #88 at 13, citing ECF Dkt. #88-1 at 69-71, 84-85; ECF Dkt. #88-2 at 102.  They also cite to deposition testimony indicating that $50,000.00 of the Purchase Order monies was transferred to Mr. Rogers' personal bank account and Mr. Norris had no documentation showing how the money was spent.  ECF Dkt. #88 at 13-14.

The Court grants summary judgment in favor of Mr. Norris and CNM as Counterclaim Plaintiffs have failed to establish genuine issues of material fact as to whether false representations were made concerning the separation and safeguarding of Purchase Order monies prior to entering into the Purchase Order.  While Mr. Norris testified that he established separate accounts for the Purchase Order monies in order to ease Mr. Beelman's concerns about the spending of his money for barge-related purposes only, both Mr. Norris and Mr. Beelman indicated that this creation of separate accounts was not discussed prior to entering into the Purchase Order, was not part of the Purchase Order, and was discussed only after the Purchase Order was signed.  ECF Dkt. #88-1 at 71-72, 84, ECF Dkt. #88-2 at 97, ECF Dkt. #89-1.  Although he testified that "Norris Manufacturing was guaranteeing this deal," Mr. Beelman acknowledged that terms concerning separate accounts and the guarding of the spending of the Purchase Order monies by CNM were not dictated terms of the Purchase Order.  ECF Dkt. #88-2 at 93-97.  Again, parties to a contract may not prove fraud by

13

claiming "that the inducement to enter into the contract was a promise that was within the scope of the integrated agreement but was ultimately not included within it." *Robins,* 838 F.Supp.2d at 646-647, citing *Paragon*, 1999 WL 280385, at *4. Accordingly, Counterclaim Plaintiffs have failed to meet their reciprocal burden on summary judgment of establishing that these alleged false assertions were made to entice Mr. Beelman to enter into a contract with Counterclaim Defendants.

As to alleged representations made by Mr. Norris to Mr. Beelman that he would move to Louisiana and personally oversee the building of the barges, the Court grants summary judgment to Counterclaim Defendants because Mr. Beelman himself admitted that this alleged statement was made outside of the Purchase Order and the parties "never got that far" due to the termination of the contract. ECF Dkt. #88-2 at 97-98. The same is true concerning Counterclaim Plaintiffs' allegations of misrepresentation that IBS would hire its employees at its own costs to assist with construction of the barges. *Id.*

For these reasons, the Court grants summary judgment in favor of Counterclaim Defendants and dismisses with prejudice Counterclaim Plaintiffs' claims of fraudulent inducement and fraud.

Concerning Counterclaim Plaintiffs allegations of negligent misrepresentation, the parties agree that Ohio law outlines the law of negligent misrepresentation as follows:

> One who, in the course of his business, profession, or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

ECF Dkt. #82-1 at 18; ECF Dkt. #88 at 19; *Jacob v. Home Sgs. and Loan Co. of Youngstown, Ohio*, 679 F.Supp.2d 837, (N.D. Ohio 2010), citing *Delman v. City of Cleveland Heights*, 41 Ohio St.3d

14

1, 4, 534 N.E.2d 835 (1989) (emphasis in original) (quoting Restatement (Second) of Torts § 552(1) (1965)).

Counterclaim Defendants assert that they are entitled to summary judgment on this claim because no false statements were made to Mr. Beelman and he and Counterclaim Plaintiffs cannot rely upon alleged statements made after the parties entered into the Purchase Order.  ECF Dkt. #82-1 at 24.  Counterclaim Defendants further assert that Counterclaim Plaintiffs cannot show justifiable reliance upon any alleged misrepresentations and the Purchase Order involved two sophisticated business entities engaged in an arms-length transaction.  *Id.* at 24-28.

To the extent that Counterclaim Plaintiffs allege negligent misrepresentation that led them into entering the Purchase Order, the Court grants summary judgment in Counterclaim Defendants' favor.  As explained above, Mr. Beelman testified at deposition that no false representations were made to him prior to entering the Purchase Order and he was aware that Mr. Norris, CNM, Mr. Rogers, and IBS had never designed or built barges before.  ECF Dkt. #82-4 at 88-93.  Thus, even though Counterclaim Plaintiffs cite to statements made to Mr. Beelman concerning Counterclaim Defendants' ability to design and manufacture barges and Mr. Rogers' "extensive barge background and experience," Mr. Beelman knew that Counterclaim Defendants had never designed or built barges before.  He nevertheless entered into the Purchase Order.  Further, one of the terms of the Purchase Order was that CNM had to submit its drawings to Counterclaim Defendants and Counterclaim Defendants' engineer would approve the drawings before construction would begin.  ECF Dkt. #89-1 at 1.  Accordingly, the Court finds that Counterclaim Plaintiffs cannot establish that false statements were made that led Mr. Beelman to enter the Purchase Order when Mr. Beelman testified that no false statements were made prior to entering the Purchase Order, he knew the lack

15

of barge design and construction experience of Counterclaim Defendants, and the Purchase Order required CNM to submit its barge design drawings to Mr. Beelman's engineer for approval prior to beginning any construction.

For these reasons, the Court grants summary judgment in favor of Counterclaim Defendants on Counterclaim Plaintiffs' negligent misrepresentation claim.

### B.        Conversion (Count V)

Counterclaim Defendants move for summary judgment on Counterclaim Plaintiffs' amended counterclaim alleging conversion against them. ECF Dkt. #82-1 at 28-31.  They assert that Mr. Beelman gave up ownership and the right to possession of the $307,500.00 that Counterclaim Plaintiffs allege was converted unlawfully.  *Id*. at 28.  As support for this assertion, they cite to Mr. Beelman's request, after execution of the Purchase Order, for a modification of the Purchase Order to give Mr. Beelman the right to approve use of the monies that it had paid pursuant to the Purchase Order.  *Id.* at 30.  They also assert that a breach of contract does not constitute conversion as it is separate from a conversion claim and in order to assert the tort claim of conversion, Counterclaim Plaintiffs must allege a breach of duty owed separately from obligations created by the Purchase Order.  *Id*. at 28-31.  Counterclaim Plaintiffs agree that a conversion claim can be maintained against a contracting party independent of a breach of contract claim as long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract.  ECF Dkt. #88 at 19, citing *Battista v. Lebanon Trotting Ass'n*, 583 F.2d 111, 117 (6th Cir. 1976); *DeNune v. Consolidated Capital of North Am., Inc.*, 288 F.Supp.2d 844, 852 (N.D. Ohio 2003).

Under Ohio law, "[c]onversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent

16

with his rights." *Dana Ltd. v. Aon Consulting, Inc*., 984 F.Supp.2d 755, 768 (N.D. Ohio 2013),
quoting *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592, 752 N.E.2d 281 (2001).  In order
to establish a claim of conversion under Ohio law, a party must show "' (1) plaintiff's ownership or
right to possess the property at the time of the conversion; (2) defendant's conversion by a wrongful
act or disposition of plaintiff's property; and (3) damages.'" *Dana Ltd.*, 984 F.Supp2d at 768,
quoting *Kuvedina, LLC v. Cognizant Tech. Solutions*, 946 F.Supp.2d 749, 761 (S.D.Ohio 2013).

 The Court grants summary judgment in favor of Counterclaim Defendants on the conversion
claim.  Counterclaim Defendants correctly assert that once Counterclaim Plaintiffs made the initial
payment pursuant to the Purchase Order, the monies became CNM's upon transfer.  As this Court
found in ruling on the motion to dismiss this amended counterclaim earlier in this case,
Counterclaim Defendants rightfully secured possession of the initial payment of $307,500.00 under
the obligations and duties of the Purchase Order and a person who rightfully secures possession of
property is not held to have converted it "'until he fail[s] to restore it upon demand, or by some act
or circumstance of his own creation.'" ECF Dkt. #76 at 13, quoting *Fid. & Deposit Co. v. Farmers
& Citizens Bank*, 72 Ohio App. 432, 52 N.E.2d 549 (1943).  This Court, construing the facts in a
light most favorable to Counterclaim Plaintiffs, allowed this counterclaim to proceed as
Counterclaim Plaintiffs alleged a duty arising out of Counterclaim Defendants' representations as
to how the monies paid for the barge project would be handled and these promises were allegedly
separate from the terms and agreements of the Purchase Order.  ECF Dkt. #76 at 13.

 However, at this summary judgment stage, Counterclaim Plaintiffs have failed to meet their
burden of establishing that Counterclaim Defendants did not rightfully have possession or dominion
over the monies paid as part of the Purchase Order, a contract that both parties agree is valid.  They

allege that Counterclaim Defendants failed to fulfill their promise to keep Mr. Beelman's money for the barge project sequestered in a separate account used only for the barge project. ECF Dkt. #88 at 20. However, this money is part and parcel of the Purchase Order. Counterclaim Defendants have not shown that they have any right to the monies paid pursuant to the Purchase Order. Accordingly, the Court grants summary judgment in favor of Counterclaim Defendants as to Counterclaim Plaintiffs' amended counterclaim for conversion.

### C. Unjust Enrichment (Count VI)

Counterclaim Defendants also move for summary judgment on Counterclaim Plaintiffs' amended counterclaim for unjust enrichment. ECF Dkt. #82-1 at 31-33. They assert that such a claim cannot exist when a valid and enforceable written contract exists and no evidence of fraud, bad faith, or illegality exists. *Id*. Counterclaim Plaintiffs assert that they can pursue this claim against Mr. Norris, Mr. Rogers and IBS as they are not parties to the Purchase Order, and they can pursue the claim against CNM because evidence of fraud and bad faith exists. ECF Dkt. #88 at 20.

Under the quasi-contractual theory of unjust enrichment, "a party may recover the reasonable value of services rendered in the absence of an express contract if denying such recovery would unjustly enrich the opposing party." *Kendall v. Phoenix Home Health Care Servs., Ltd.*, 2016 WL 5871506, at *2 (N.D. Ohio 2016), citing *Dailey v. Craigmyle & Son Farms, L.L.C.*, 177 Ohio App. 3d 439, 449, 894 N.E.2d 1301 (Ohio App. 4th Dist. 2008) (quoting *Cooper v. Smith*, 155 Ohio App. 3d 218, 228, 800 N.E.2d 372 (Ohio App. 4th Dist. App. 2003)); accord *Dixon v. Smith*, 119 Ohio App. 3d 308, 317 (Ohio App. 3rd Dist. 1997). In order to establish a claim for unjust enrichment, a plaintiff must show "(1) that a benefit was conferred by the plaintiff on the defendant; (2) the defendant's knowledge of the benefit; and (3) the improper retention of the benefit." *Johnson v.*

*Calhoun Funeral Homes, Inc.*, No. 1:16CV2553, 2017 WL 661692, at *3 (N.D. Ohio 2017),citing

*Hambleton v. R.C. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

Counterclaim Defendants correctly point out that "[u]njust enrichment is generally precluded where a valid, enforceable contact exists between the parties."  ECF Dkt. #82-1 at 31; *Kendall*, 2016 WL 5871506, at *2, citing *Cook v. Home Depot USA, Inc*., No. 2:06-cv-00571, 2007 WL 710220, at *8 (S.D. Ohio Mar. 6, 2007) ("Ohio law does not allow parties to 'seek damages under quasi-contractual theories of recovery' such as a claim of unjust enrichment when a contract governs the relationship.")(quoting *Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078 (S.D. Ohio 1992)).  Ohio law does allow a party to plead unjust enrichment if a dispute exists over the enforceability of a contract.  *Kendall*, 2016 WL 5871506, at *2, quoting *Bonner Farms, Ltd. V. Power Gas Mktg. & Transmission, Inc*., No. 5:04-cv-2188, 2007 WL 2463247, at *14 (N.D. Ohio Aug. 28, 2007).  Here, there is no dispute over the Purchase Order's validity or enforceability.

However, Counterclaim Plaintiffs assert that under Ohio law, they can sustain claims of unjust enrichment against Mr. Norris, Mr. Rogers and IBS as they are not parties to the Purchase Order as that was a contract between Counterclaim Plaintiffs and CNM only.  ECF Dkt. #20.  The Court agrees with Counterclaim Plaintiffs and denies summary judgment to Mr. Norris, Mr. Rogers and IBS on the amended counterclaim for unjust enrichment.

While Ohio law generally bars recovery under unjust enrichment when an express contract covers the same subject, most of the cases making such a holding involve claims between parties to an express contract.  *See Resource Title Agency, Inc. v. Morreale Real Estate Servs., Inc*., 314 F.Supp.2d 763, 772 (N.D. Oho 2004).  In *Resource Title*, the Court found that circumstances may exist under Ohio law where an unjust enrichment claim can proceed "against a non-contracting party

19

who benefits from the uncompensated work of one of the parties to the contract." *Id*. at 772. The Court held in the construction context that when a subcontractor is not paid by a contractor and the owner has failed to pay the contractor for the job, the subcontractor can recover from the owner under unjust enrichment. *Id.* at 772-773, citing *Reisenfeld & Co. v. Network Group, Inc*., 277 F.3d 856, 860–861 (6th Cir.2002)(citing *Ross–Co Redi Mix Co. v. Steveco, Inc*., No. 95CA3, 1996 WL 54174, at *3 (Ohio App. 4th Dist. 1996); *Brower Prods. Inc. v. Musilli*, Nos. 98CA58, 98CA59, 1999 WL 317122, at *2 (Ohio App.2nd Dist. 1999); *Booher Carpet Sales, Inc. v. Erickson*, No. 98-CA-0007, 1998 WL 677159, at *7 (Ohio App. Dist. 2nd Dist. 1998); *Steel Quest, Inc. v. City Mark Constr. Servs*., No. C-960994, 1997 WL 674614, at *2 (Ohio App. 1st Dist. 1997)). In addition, Ohio courts have allowed claims of unjust enrichment by a contractor against a non-party lessee who provided services to a lessor. *Resource Title*, 314 F.Supp.2d at 773, citing *Kazmier v. Thom*, 63 Ohio App.2d 29, 31–32, 408 N.E.2d 694 (1978); *Andy's Glass Shops v. Leelanau Realty*, 50 Ohio App.2d 355, 363 N.E.2d 601 (1977).

Similarly in the instant case, Counterclaim Plaintiffs and CNM are the only parties to the Purchase Order. ECF Dkt. #89-1. Mr. Norris, Mr. Rogers, and IBS are not parties to the Purchase Order. However, Counterclaim Plaintiffs have provided sufficient evidence to establish genuine issues of material fact that they made the initial payment for a service and products pursuant to the Purchase Order and Mr. Norris, Mr. Rogers, and /or IBS, although not direct parties to the Purchase Order, retained some of that initial payment and allegedly failed to fully perform, and used some of those monies. While Counterclaim Defendants assert that those monies were used to prepare for the design and building of the barges, Counterclaim Plaintiffs assert that the monies were used for a vacation in the Bahamas, to pay for Mr. Rogers' personal expenses, and to buy property at auction

20

without authority. ECF Dkt. #88 at 20. The Court therefore denies Counterclaim Defendants' motion for summary judgment on the amended counterclaim of unjust enrichment against Mr. Norris, Mr. Rogers and IBS.

Counterclaim Plaintiffs also assert that an unjust enrichment claim is proper against CNM despite the existence of a contract because CNM has engaged in fraud and bad faith. ECF Dkt. #88 at 20. Ohio law does allow an unjust enrichment claim to be maintained when an express contract exists between the parties and evidence of fraud, bad faith, or illegality is demonstrated. *Resource Title*, 314 F.Supp.2d at 772-773. The Court has already explained above that Counterclaim Plaintiffs cannot establish fraud or fraudulent inducement to enter into the Purchase Order, so asserting a fraud claim here to establish an unjust enrichment count despite a contract with CNM fails as a matter of law. Counterclaim Plaintiffs also submit that CNM acted in bad faith "as described above" in their brief in opposition to the motion for partial summary judgment. ECF Dkt. #88 at 20. However, Counterclaim Plaintiffs fail to define or discuss bad faith and fail to specifically point to the evidence that they are relying upon to demonstrate CNM's bad faith for unjust enrichment purposes. Accordingly, the Court grants summary judgment in favor of CNM and dismisses with prejudice Counterclaim Plaintiffs' amended counterclaim of unjust enrichment against CNM.

### D.    Piercing the Corporate Veil (Count VII)

Finally, Counterclaim Defendants move for summary judgment on Counterclaim Plaintiffs' claims of piercing the corporate veils of CNM and IBS in order to hold Mr. Norris and Mr. Rogers personally liable for the damages in this case. ECF Dkt. #82-1 at 34-36.

Shareholders, officers, and directors are not generally liable for the debts of corporations. *Dombroski v. Wellpoint, Inc.*, 119 Ohio St.3d 506, 510, 895 N.E.2d 538 (2008).  However, the corporate form may be disregarded and the shareholders and officers of a corporation may be held liable for corporate misdeeds when:

> (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own;
>
> (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity; and
>
> (3) injury or unjust loss resulted to the plaintiff from such control or wrong.

*Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 289, 1993 Ohio 119, 617 N.E.3d 1075 (1993); *see also Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005).

Piercing the corporate veil is not a cause of action itself.  *Allied Diversified Construction, Inc. v. Elite Mechanical, Inc.*, No. 1:16CV334, 2016 WL 7034238, at *3 (S.D. Ohio 2016), citing *Orrand v. Kin Contractors, LLC*, No. 2:09cv1129, 2011 WL 1238301, at *4 (S.D. Ohio Mar. 30, 2011).  Rather, "it is a means of imposing liability on a defendant; therefore, each basis for piercing the corporate veil is an independent ground of recovery that must be specifically pleaded." *Id.*

As to the first prong of the *Belvedere* test for piercing the corporate veil, the Court conducts an alter-ego analysis and considers a non-exclusive list of factors in order to determine whether a corporation and its shareholders, officers, or directors are merely alter egos of the individual shareholders, officers, or directors.  *Allied*, 2016 WL 7034238, at *3, citing *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (quoting *Belvedere*, 617 N.E.2d at 1086.  Those factors include:

22

(1) grossly inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor corporation at the time the debt is incurred; (4) shareholders holding themselves out as personally liable for certain corporate obligations; (5) diversion of funds or other property of the company property for personal use; (6) absence of corporate records; and (7) the fact that the corporation was a mere façade for the operations of the dominant shareholder(s).

*Id.*

Counterclaim Defendants contend that Counterclaim Plaintiffs cannot establish any of the three *Belvedere* elements in order to impose liability on Mr. Norris and Mr. Rogers individually by piercing the corporate veils of CNM or IBS.  ECF Dkt. #82-1 at 34.  The Court addresses each claim in turn.

Counterclaim Defendants first submit that Counterclaim Plaintiffs cannot show that CNM lacked a separate mind, will, or existence of its own apart from Mr. Norris.  ECF Dkt. #82-1 at 34.  They contend that Counterclaim Plaintiffs cannot demonstrate any of the seven factors that Courts consider in evaluating the first part of the *Belvedere* test.  *Id.*

The Court agrees.  In their brief in opposition to the motion for partial summary judgment, Counterclaim Plaintiffs first rely on the holding in *Orrand* for the proposition that when a plaintiff pleads sufficient facts to meet the second and third elements of the *Belvedere* test, determining the control issue in the first element is a "'fact-sensitive question' which should not be answered until the plaintiff has had some opportunity to conduct discovery."  2011 WL 1238301, at *4, quoting *Bledsoe v. Emery Worldwide  Airlines*, 258 F.Supp.2d 780, 787 (S.D. Ohio 2011).    That holding is inapplicable in the instant case as discovery has already been conducted in this case and is in fact completed.  ECF Dkt. #77.

Counterclaim Plaintiffs set forth "facts" that they assert support their piercing the corporate veil theory against CNM and Mr. Norris.  ECF Dkt. #88 at 21-22.  Only four of those "facts" involve

CNM.  *Id.*  Two of those four factual scenarios concern CNM allegedly commingling funds between its own accounts with the separate barge accounts and the commingling of the barge account funds with IBS and Mr. Rogers.  *Id.* at 21.  The other two factual scenarios concern alleged authorizations by Mr. Norris and Mr. Rogers of CNM to purchase equipment that was owned by IBS and CNM allowing the separated funds for the barge project to be personally used by Mr. Rogers.  *Id.* at 21-22.

None of these alleged facts meet the first prong of the *Belvedere* test for establishing control by Mr. Norris of CNM.  Counterclaim Plaintiffs fail to point the Court to any facts demonstrating genuine issues of material fact concerning any of the seven factors to consider in establishing control.  Nor do Counterclaim Plaintiffs point to any other facts establishing that CNM was fundamentally indistinguishable from Mr. Norris.  They allege that Mr. Norris authorized CNM to buy equipment owned by IBS.  ECF Dkt. #88 at 22.  However, they fail to explain how this shows that CNM had no separate mind, will or existence of its own.  They further allege that Mr. Norris allowed the commingling of  funds between CNM and an account that was supposed to be separate from CNM's main operating account.  Again, Counterclaim Plaintiffs fail to explain how this fact leads to a legal conclusion that CNM had no separate mind, will, or existence of its own.  Finally, Counterclaim Plaintiffs assert that CNM and Mr. Norris allowed transfers of the barge monies into the personal account of Mr. Rogers.  *Id.*   However, in the body of its brief in opposition to the partial motion for summary judgment, Counterclaim Plaintiffs allege that "Mr. Norris transferred $50,000 of the Beelman Money out of the separate barge account into a bank account in the name of International Barge." ECF Dkt. #88 at 7.  Counterclaim Plaintiffs go on to explain that the money was then transferred by Mr. Rogers, who was 75% owner of IBS, into his personal account.  *Id.* at 7, 10.  This transfer fails to rise to the level of establishing that Mr. Norris had such total control and

24

dominion over CNM such that CNM had no separate mind, will, or existence of its own.  Moreover, CNM had an established prior existence well before the instant Purchase Order and prior business dealings with both Counterclaim Plaintiffs and Mr. Rogers, which also negates a finding that control over CNM was so complete by Mr. Norris that it had no separate mind, will, or existence of its own. ECF Dkt. #88 at 2.  Thus, the Court grants summary judgment in favor of Mr. Norris and dismisses with prejudice Counterclaim Plaintiffs' theory of piercing the corporate veil against him in conjunction with CNM as Counterclaim Plaintiffs have not met the first element of the *Belvedere* test.

As to piercing the corporate veil and holding Mr. Norris and Mr. Rogers personally liable for conduct in conjunction with IBS, the Court notes that IBS was a start-up company with whom CNM was to subcontract under the Purchase Order to supply labor, materials, equipment, and supervision for the barge project.  ECF Dkt. #89-1.  Mr. Beelman knew that IBS was a start-up company and he knew that neither Mr. Norris nor Mr. Rogers had ever designed or built barges before.  ECF Dkt. #82-4 at 88-92.  He also knew that neither Mr. Norris nor Mr. Rogers were going to build the barges in this case.  *Id.*  Counterclaim Plaintiffs specify facts that it submits supports its theory of piercing the corporate veil against Mr. Norris and Mr. Rogers in conjunction with IBS.

The Court finds that Counterclaim Plaintiffs cannot establish the first prong of the *Belvedere* test relating to piercing the corporate veil and holding Mr. Norris personally liable.  They cite to no facts showing that Mr. Norris exerted any control over IBS.  They note that Mr. Norris was not even an owner of IBS as his wife had 25% ownership of IBS and Mr. Rogers had 75% ownership.  ECF Dkt. #88 at 22.  They also indicated that IBS had no operating agreement or documentation showing who owns the percentages of IBS.  *Id.* at 22.  However, Mr. Norris testified that IBS did have an

25

operating agreement.  ECF Dkt. #82-3 at 47-48.  He also testified that he received no salary or distributions from IBS and he was not a member,  employee, or independent contractor of IBS.  *Id.* at 48-52.  He also had no access or ability to access IBS's bank account.  *Id.*

Nevertheless, even presuming that Counterclaim Plaintiffs can meet the first prong of the *Belvedere* test and establish that Mr. Norris and Mr. Rogers exercised such control over IBS such that it had no separate mind, will, or existence of its own, they fail to establish the second prong of the *Belvedere* test that Mr. Norris and Mr. Rogers exercised that control as to commit fraud or an illegal act against Counterclaim Plaintiffs.

In *Dombroski*, the Ohio Supreme Court limited the second prong of the *Belvedere* test, holding that a plaintiff must "demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act."  895 N.E.2d at 545.  The court recognized that it is unjust for shareholders to hide behind the corporation fiction to shield their own liability for corporate misdeeds, but declined to expand the second prong of the *Belvedere* test to include unjust or inequitable conduct committed by shareholders, as numerous Ohio appellate courts and the Sixth Circuit Court of Appeals had held.  *Id.* at 543-544 (citations omitted).  The *Dombroski* Court found that this language was too broad, would contradict the concept of limited shareholder liability, and would result in frequent veil piercing as every lawsuit against close corporations sets forth a form of unjust or inequitable action.  *Id.* at 545-546. The court stressed that piercing the corporate veil "is the 'rare exception' that should only be 'applied in the case of fraud or certain other exceptional circumstances.'" *Id.* at 544, quoting *Dole Food Co. V. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003).  Thus, the *Dombroski* Court limited piercing to cases where shareholders "used their complete control over the

26

corporate form to commit specific egregious acts." *Id.* at 544. The court held that a plaintiff must show that the shareholder "exercised control over the corporation in such a manner as to commit fraud, an illegal, or similarly unlawful act." *Dombroski*, 895 N.E.2d at 545.  The court cautioned that the expansion should be considered in the context of applying piercing the corporal veil "only in instances of extreme shareholder misconduct." *Id.*  In applying this version of the second prong of *Belvedere*, the *Dombroski* Court held that Dombroski's claim failed of piercing the corporate veil as she was suing for a "straightforward tort" of insurer bad faith, which was " a basic example of misconduct" that was "not the type of exceptional wrong that piercing is designed to remedy." *Id.*

In this case, the Court has already found that Counterclaim Plaintiffs have failed to establish their counterclaims of fraud, fraudulent inducement, negligent misrepresentation, and conversion. The acts of Mr. Norris and IBS as cited by Counterclaim Plaintiffs fail to rise to the level of extreme shareholder misconduct required by the second prong of *Belvedere* as described in *Dombroski* to pierce the corporate veil.  Counterclaim Plaintiffs assert that Mr. Norris authorized CNM to buy equipment owned by IBS.  ECF Dkt. #88 at 21.  They fail to show how this constituted conduct rising to the level of fraud, an illegal act or similar unlawful act when IBS was the subcontractor of CNM according to the Purchase Order.  ECF Dkt. #89-1 at 1.  They assert that CNM commingled funds with IBS, but fail to show how this conduct rises to the level required to meet the second prong of *Belvedere* when IBS was a named subcontractor to CNM in the Purchase Order.  ECF Dkt. #88 at 21; ECF Dkt. #89-1 at 1.  They further assert that CNM and IBS allowed funds that were supposed to be separated for the barge project to be transferred to Mr. Rogers' personal account. ECF Dkt. #88 at 22. However, Counterclaim Plaintiffs indicate elsewhere in their response to the motion for partial summary judgment that Mr. Norris transferred funds out of the separate barge

account of CNM to the IBS account, not directly into Mr. Rogers' personal account.  ECF Dkt. #88 at 7.  They further assert that IBS allowed  Mr. Norris' wife to be a 25% owner of IBS even though she had no involvement in the company so Mr. Norris could avoid being the owner of IBS for personal and tax reasons.  ECF Dkt. #88 at 22.  Counterclaim Plaintiffs fail to show how this conduct rises to the level of fraud, illegal acts or similar unlawful conduct required by *Dombroski*.

The Court finds the same with regard to Counterclaim Plaintiffs' assertions against Mr. Rogers.  They allege that he sold equipment owned by IBS and retained the proceeds for himself and he obtained and spent some of the initial payment of $307,500.00 that Counterclaim Plaintiffs made to CNM.  ECF Dkt. #88 at 21-22.  However, Counterclaim Plaintiffs fail to show how this conduct rises to the fraudulent, illegal or similarly unlawful conduct required by *Dombroski* as Mr. Rogers was an owner of IBS and IBS was the subcontractor of CNM under the Purchase Order.  ECF Dkt. #89-1.  Merely pointing to these facts without more does not meet the restrictive second prong of *Belvedere*.  Finally, Counterclaim Plaintiffs assert that IBS had no operating agreement, maintained no records, filed no tax return in 2014 and did not issue tax documents to Mr. Rogers for 2014 despite the fact that he was paid $50,000.00 from Counterclaim Plaintiffs.  ECF Dkt. #88 at 22.  However, IBS was a start-up company in 2014, which Mr. Beelman knew, and IBS was made a subcontractor in the Purchase Order and Mr. Rogers was an owner in the company.  ECF Dkt. #89-1.  Again, without more to establish the level of conduct required under the second prong of *Belvedere* as outlined by *Dombroski*, the Court finds that Counterclaim Plaintiffs cannot meet the Belvedere test for piercing the corporate veil of IBS in order to hold Mr. Norris and/or Mr. Rogers personally liable.

### III.     SUMMARY AND CONCLUSIONS

For the above reasons, the Court GRANTS IN PART AND DENIES IN PART Counterclaim Defendants and CNM's motions for partial summary judgment.  ECF Dkt. #s 82, 83.

The Court GRANTS summary judgment in favor of Counterclaim Defendants and CNM and dismisses with prejudice Counterclaim Plaintiffs' amended counterclaims for:  fraud and fraudulent inducement (Count III); negligent misrepresentation (Count IV); conversion (Count V) unjust enrichment against CNM only (Count VI) and Counterclaim Plaintiffs' theories of piercing the corporate veils of CNM and IBS in order to hold Mr. Norris and Mr. Rogers personally liable (Count VII).

The Court DENIES Counterclaim Defendants and CNM's motions for partial summary judgment on Counterclaim Plaintiffs' amended counterclaims for unjust enrichment against Mr. Norris, Mr. Rogers and IBS (Count VI).  ECF Dkt. #s 82, 83.


DATE: March 30, 2017                              */s/George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE

29